182 P.2d 939

O'NEIL et al. v. MARTIN.

No. 4887.

Supreme Court of Arizona.

June 23, 1947.

John L. Sullivan, Atty. Gen., and John W. Rood and Burr Sutter, Asst. Attys. Gen., for appellants.

Stephen W. Langmade, of Phoenix, for appellee and cross-appellant.

Charles L. Strouss, of Phoenix, for cross-appellees.

UDALL, Justice.

On July 23, 1945, C. M. Martin, the appellee, brought the instant suit in the Superior Court of Maricopa County against D. C. O'Neil, Warren Peterson, and Joe Hunt as members of the State Tax Commission and individually, in which he was successful in recovering judgment against the Commission for $3,011.17, being the amount of an additional sales tax levy he had paid to the Commission under protest.

Inasmuch as two previous court decisions in suits involving Martin and the Commission are inextricably linked with the instant suit it becomes necessary to delineate the history of this prior litigation. In these matters, present as well as past, the difficulties have arisen from the definition and the implications therein of the realtionship existing between Martin and the United Producers & Consumers Co-operative.

The modus operandi of dealings between Martin and the Co-op is detailed in State Tax Comm. of Arizona v. Martin (May 20, 1941), 57 Ariz. 283, 113 P.2d 640, 139 A.L.R. 408. That suit involved Martin's unsuccessful effort to recover from the Commission $18,392.60 in retailer's sales tax paid under protest for the period May 1, 1935 to January 31, 1939. The Court there held that Martin and the Co-op were principal and agent; that the agent Co-op merely held merchandise on consignment, title to which remained in Martin until sold by the Co-op; that there was only one sale and, therefore, only one taxable transaction, namely, that by the Co-op to the final consumer; and, following therefrom, that Martin was liable on goods he furnished to the Co-op for the sales tax based upon the Co-op's gross proceeds of sale.

Subsequent to this Court's decision in State Tax Comm. v. Martin, supra, and based upon an audit covering a subsequent taxing period (February 1, 1939 to August 31, 1941) the Commission again levied an additional sales tax of $3,011.17 on Martin, which is as before described the amount here in question. All statutory requirements as to notice, hearing, etc., were strictly followed and, by appropriate order, the Commission sustained the levy causing Martin to pay the additional tax under protest on April 8, 1942 and to request a further hearing which was not held until some three years later on May 25, 1945.

However, less than two months after he had paid this tax under protest, Martin filed, as he had a right to do, an action in the Superior Court of Maricopa County under Art. 7, sec. 27-701 et seq., A.C.A. 1939, in which, under an agreed statement of facts, he prayed for a declaratory judgment to establish his rights in this matter. It was specifically stipulated by both Martin and the Commission that the

method of conducting business as between Martin and the Co-op was identical with that existing at the time of the decision in State Tax Comm. v. Martin. And yet by its judgment of January 18, 1943 the trial court declared Martin's rights to the effect that he would not be liable for the additional levy. For a reason unknown to us the Commission took no appeal from this part of the declaratory judgment. An appeal was taken upon another phase. See Martin v. Moore, 61 Ariz. 92, 143 P.2d 334.

Because the Commission refused to abide by the portion of the declaratory judgment previously detailed (though not appealing from it), and by reason of its refusal, therefore, to refund the $3,011.17, Martin requested and received a belated rehearing before the Commission on May 25, 1945. The Commission, at this time, made the order for the additional levy final whereupon Martin successfully filed a complaint in the Superior Court asking for and receiving a refund of the amount in question. And the appeals from this judgment (by the Commission as to the refund ordered, and by Martin as to the dismissal of that part of his action brought against the members of the Tax Commission as individuals) constitute the case now before us for review.

Martin here contends that the decision of the Superior Court in the declaratory judgment suit is res adjudicata as to his rights and should now control this Court as it evidently did the Superior Court in this present suit; that as that portion of the declaratory judgment was not appealed from it became final and is not now subject to collateral attack. As opposed to this the Commission alleges the declaratory judgment itself to be null and void as it is directly contra to the previous Supreme Court decision in State Tax Comm. v. Martin which case was between the same parties, on an identical relationship, over an identical question on the same tax, involving the same tax statute unamended as to the portions applicable, and differing only in the taxing period concerned. Therefore, the matter at issue in the declaratory judgment suit, it argues, was itself res adjudicata causing that judgment to be a nullity and subject, therefore, to collateral attack.

In its present appeal from the Superior Court judgment the Commission relies upon two assignments of error: (1) The trial court erred in denying the appellant's motion to dismiss the complaint; (2) the trial court erred in granting appellee's motion for summary judgment. Both assignments raise the problem as to whether the declaratory judgment or State Tax Comm. v. Martin is controlling in the dispute now before us.

Specifically, Martin argues that although the Co-op is his agent (admitting this to have been determined by State Tax Comm. v. Martin, and by stipulation in the declaratory judgment action), still, he ought to be

liable for the retailer's sales tax only upon what he terms to be his own "gross proceeds of sale" and not upon the "gross receipts and profits" received by his agent, the Co-op. He contends that had the Commission levied the tax against the Co-op to begin with, then and only then would such levy lie against the gross receipts and profits of the Co-op.

By way of explanation as to why a levy against the gross receipts of the agent Co-op, would according to Martin, amount to a larger tax liability than a levy against what he contends to be his own gross income, the manner by which this principal and agent do business becomes important. As detailed in State Tax Comm. v. Martin [57 Ariz. 283, 113 P.2d 641]:

" * * * merchandise is the property of appellee (Martin) and is taken from the warehouse and placed on the shelves and counters by his employees who keep stock records of it, so as to know for insurance purposes how much he has there and how much in the warehouse. These goods are sold by the Co-op to its members in this way: When a member enters the Co-op's place of business and purchases an article of merchandise.the clerk serving him makes out a sales ticket showing whether the purchaser is a member, his name, his Co-op number, the date, amount paid and the description of the merchandise, marks it 'paid,' all sales being for cash, and turns it into the Co-op's cashier. At the close of the day the Co-op's bookkeeping depart-ment segregates the sales tickets into different classes of commodities for which the Co-op has a classification, there being nine in all, for instance, all tickets on gasoline sales being placed in one class, those for hardware in another, those for kerosene in still another, etc., totals them, and the next morning issues a purchase order for them and turns it over to C. M. Martin, * * *. Upon receipt of the purchase order, appellee makes out a bill for the goods included therein and delivers it to the Co-op, both the purchase order and the bill being for the goods the Co-op sold the previous day. Upon receipt of the bill from appellee the Co-op posts the purchases in its purchase journal as a permanent record of accounts payable and about every other day pays appellee on account, there being at all times a balance due him."

The additional levy against Martin here in question represents the spread or difference between the gross income as shown on Martin's books and the larger figure (larger to cover handling costs, etc., and all the added charges that go into the conduct of a retail business) as shown upon the books of his agent, the Co-op. Aside from the question as to who is legally obligated to pay it, undoubtedly the tax in question ($3,011.17) is due the state.

There is no question but that the Commission is authorized to make an additional levy in the event of a taxpayer's error in computing the amount due. Sec. 73-1315 (a), A.C.A.1939:

"If the taxpayer shall make any error in computing the tax assessable against him, the commission shall correct such error or re-assess the proper amount of taxes and notify the taxpayer of this action by mailing to him promptly a copy of the corrected assessment, and any additional tax for which such taxpayer may be liable shall be paid within ten (10) days after the receipt of such statement."

In order to set out in bold relief the legal collision between the holdings in the original State Tax Comm. v. Martin and the subsequent declaratory judgment suit in which the parties stipulated that " * * * The method of conducting the business between C. M. Martin and said co-operative is the same as it existed when the Supreme Court rendered its said decision. * * * " and thereby to point up the fact that this dispute must, of necessity, be governed in part by which of these decisions is res adjudicata as to the case at bar, we here set up side by side a portion of the findings in these two cases. In State Tax Comm. v. Martin this court said:

" * * * There can be no question but that the goods, wares and merchandise sold by the Co-op during the period involved were at the time they were sold the property of appellee. (Martin). All the evidence is to this effect. Appellee placed these goods on the shelves and counters of the Co-op's salesroom to be sold by the Co-op mostly at retail and by appellee at wholesale, and the Co-op neither purchased nor paid for them prior to their sale and delivery. The title to them remained in appellee until it passed directly from him to the consumer through the agency of the Co-op, there being no period of time whatever when it rested in the Co-op. The issuance by the Co-op to appellee of a purchase order for these goods, wares and merchandise and the delivery to it by him of a bill for them, both acts being performed after the goods had been sold and delivered and title to them passed to a third person, could not by any stretch of the imagination have the effect of vesting title to the goods in the Co-op at any stage of the transaction. The only possible conclusion to be drawn from the facts is that the goods were in the salesroom of the Co-op to be sold by it as the agent of appellee and, hence, that they were there simply on consignment from appellee. This being true, the Co-op was merely the agent of appellee for selling the goods, the title to which he had retained until he transferred it to the consumer through his agent. 'A consignment of goods for sale,' to use the language of the Rio Grande Oil Co. v. Miller Rubber Co. of New York, 31 Ariz. 84, 250 P. 564, 565, 'does not pass the title at any time, nor does it contemplate that it should be passed. The very term implies an agency, and that the title is in the consignor, the consignee being his agent.' Commercial Securities Corporation [Consolidated] v. Babbitt Motor Co., 36 Ariz. 438, 286 P. 820; 15 C.J.S., Consign, 988, first paragraph."

" * * * A sale of his merchandise through an agent rendered him no less subject to the tax than he would have been had he made the sale himself."

Before setting up the contradictory holding in the declaratory judgment suit, it is well to keep in mind that in State Tax Comm. v. Martin quoted in part above, this Court finally concluded that "the facts established that the co-operative was the mere agent of the wholesaler for the purpose of selling the latter's goods at retail, so that he (the wholesaler) was liable for the sales tax on goods sold at retail." 139 A.L.R. 408. Based upon that conclusion the Tax Commission should have there levied and collected from Martin a tax based upon the Co-op's gross proceeds of sales. In spite of this, the lower court later, in the Maricopa County declaratory judgment action No. 51136, found that:

"The plaintiff's volume of business, gross proceeds of sale, and gross income is different from the co-op, and the plaintiff has no control therein or in the fixing of the prices, gross income, proceeds of sale or volume of business. Although the co-op is the agent of Martin in the sale of goods on consignment it would not be equitable, and it is not legal to impose a tax on C. M. Martin based on the volume of business, gross proceeds of sale, or gross income of an agent under the facts existing in the present instance. The Tax Commission having a discretion to impose the tax, either against the agent or the principal, must base the rate fixed by the statute on the volume of business, gross income, or proceeds of sale accruing to the taxpayer against which it imposes the tax. * * * "

A court has the prerogative in a new case of going against the settled law of a previous case, and to secure the benefit of a fresh review of the law and to meet changing circumstances and changing conditions it is well that the doctrine of stare decisis is but a doctrine of persuasion and not an iron chain of necessary conclusion. When a court has jurisdiction, and does decide a matter contrary to the law set forth in a previous decision of a higher court, and no appeal is taken, such decision does represent the law of that case, and the judgment there rendered is not subject to collateral attack. But if such judgment is itself void by res adjudicata, the question there litigated having been once decided between those parties, such judgment is itself a nullity and may be collaterally attacked. Brecht v. Hammons, 35 Ariz. 383, 278 P. 381; Lisitzky v. Brady, 38 Ariz. 337, 300 P. 177. From the very nature of our judicial structure a superior court cannot review or reverse a judgment of the Supreme Court. Such judgment is, and must be, binding and controlling upon all inferior tribunals else there would never be an end to litigation. And, as stated in State v. Superior Court, 22 Ariz. 452, 197 P. 537, 538:

" * * * It is obvious that any other view would tend to bring about a deadly

conflict between the jurisdiction and power of this court and the jurisdiction and power of the superior court or the judge thereof, and would necessarily result in hampering and impeding the administration of the law and bring the law into disrepute and disfavor and deprive it of the respect and reverence of the people of the state. This must not be. It cannot be. * * * "

See also State v. Superior Court, 25 Ariz. 226, 215 P. 538; State v. Superior Court, 26 Ariz. 584, 229 P. 96; Hislop v. Rodgers, 54 Ariz. 101, 92 P.2d 527; State of Arizona v. Griffith, 54 Ariz. 436, 96 P.2d 752; Ferguson v. Superior Court, 59 Ariz. 314, 127 P.2d 131; Jones v. Zurich General Accident & Liability Ins., 2 Cir., 121 F.2d 761.

 This characterizes the declaratory judgment here under discussion. That judgment was rendered over a previous contrary decision of this Court (State Tax Comm. v. Martin) identical in every respect except for the tax period involved.

"A final judgment rendered by a court of competent jurisdiction, on the merits, is conclusive as to the rights of the parties and their privies, and as to them constitutes an absolute bar to a subsequent action involving the same claim, demand, and cause of action. If, however, the two suits do not involve the same claim, demand, and cause of action, such effect will not be ordinarily given to the prior judgment. In this respect, it is worthy of notice that there must be not only identity of subject matter, but also of the cause of action, so that a judgment in a former action does not operate as a bar to a subsequent action, where the cause of action is not the same, although each action relates to the same subject matter. *However, the successful maintenance of a second action on a different cause of action may be precluded by a prior conclusive adjudication as to a particular issue involved in both actions. The latter rule applies where the question upon which recovery in the second action depends has under identical circumstances and conditions been previously adjudicated.*" (Emphasis supplied.) 30 Am. Jur., Judgments, Sec. 172, pp. 914–917.

"A judgment for plaintiff in a suit to recover a tax for one year, or the first installment of an assessment, is conclusive evidence in a suit for taxes for the succeeding year, * * * in respect to matters actually decided in the prior suit. * * * a judgment for taxes, * * · * is not conclusive as to the liability * * * for the taxes of a subsequent year * * * unless it appears that the facts * * * are identical with those which were in issue in the former suit, and were then tried and adjudicated." 34 C. J., Judgments, Sec. 1382, p. 967.

And more specifically, on the subject of prior adjudication in state tax matters, the Supreme Court of the United States in Tait v. Western Maryland R. Co., 289 U.S. 620, 53 S.Ct. 706, 707, 77 L.Ed. 1405, at page 1408, said:

"This court has repeatedly applied the doctrine of res judicata in actions concerning state taxes, holding the parties concluded in a suit for one year's tax as to the right or question adjudicated by a former judgment respecting the tax of an earlier year. [City of] New Orleans v. Citizens' Bank [of Louisiana], 167 U.S. 371, 17 S. Ct. 905, 42 L.Ed. 202; Third Nat. Bank v. Stone, 174 U.S. 432, 19 S.Ct. 759, 43 L.Ed. 1035; Baldwin v. [State of] Maryland, 179 U.S. 220, 21 S.Ct. 105, 45 L.Ed. 160; Deposit Bank [of Frankfort] v. Frankfort, 191 U.S. 499, 24 S.Ct. 154, 48 L.Ed. 276.

See also 2 Van Fleet's Former Adjudication, 797 and ff.; Restatement, Judgments, Sec. 70; Southern Pacific R. Co. v. United States, 168 U.S. 1, 18 S.Ct. 18, 42 L.Ed. 355; Eller v. Paul Revere Life Ins. Co., 8 Cir., 138 F.2d 403, 149 A.L.R. 1191.

■ As the declaratory judgment was itself a nullity, the question there attempted to be determined having been settled by State Tax Comm. v. Martin, the declaratory judgment is subject to the collateral attack here made. And as State Tax Comm. v. Martin was res adjudicata as to the declaratory judgment suit, it is likewise controlling as to the case at bar and determinative of this appeal. We hold that the judgment of the trial court in granting Martin's motion for summary judgment in the instant case was in error. It, therefore, becomes unnecessary to consider at length Martin's cross appeal from the trial court's order dismissing the action as to the members of the State Tax Commission in their individual capacity. When the judgment against the State Tax Commission falls it makes impossible any recovery against these individual defendants. The cross appeal is without merit.

The judgment of the lower court is reversed with directions to dismiss appellee's complaint.

STANFORD, C. J., and La PRADE, J., concur.