448 P.2d 895

The INDUSTRIAL COMMISSION of Arizona, Appellant,

v.

Joe JORDAN, Jr., dba Jordan's Hacienda, Appellee.

No. 1 CA–CIV 704.

Court of Appeals of Arizona.

Dec. 30, 1968.

Rehearing Denied Jan. 27, 1969.

Review Denied March 4, 1969.

**24**

Robert K. Park, Former Chief Counsel, Robert D. Steckner, Chief Counsel, by Michael Lasher, Phoenix, for appellant.

Snell & Wilmer, by Edward Jacobson and Paul Wentworth, Phoenix, for appellee.

STEVENS, Judge.

This is an appeal from a summary judgment granted by the Superior Court in favor of appellee and against the appellant. Appellant will be hereinafter referred to as the "Commission" and appellee will be referred to as "Jordan".

The judgment appealed from is, in part, as follows:

"(2) that it is unlawful for The Industrial Commission of Arizona to include tips or gratuities received from persons other than the employer in its computation of either premiums or compensation. "IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Order of The Industrial Commission of Arizona, effective July 1, 1966 which order provides in part as follows:

'II. *BASIS OF PREMIUM*

\* \* \* \* \* \*

'4. In the case of employments or occupations where gratuities or so-called 'tips' received from persons other than the employer constitute part of the employee's earnings, remuneration shall include the actual wages paid by the employer plus the value of board and lodging, if furnished, together with the gratuities. The actual amount of such gratuities shall be used where the employer has kept a regular daily, weekly or monthly record of the amount of gratuities so received.'

"insofar as it includes gratuities or so-called tips received from persons other than the employer as a part of an employee's earnings or wages for purposes of computing premiums or compensation under the Workmen's Compensation Act is hereby vacated and set aside."

The Commission's order as set forth in the above quoted portion of the judgment, will be hereinafter referred to as the "tips regulation".

The Arizona Workmen's Compensation Act was enacted in 1925. From 1925 until 1929 there was no Commission regulation relating to the inclusion of tips for premium assessment purposes. In 1929 the Commission adopted a regulation which provided for the inclusion of tips in the computation of premiums to be paid by employers coming within the Act. The regulation remained effective until 1 July, 1954, at which time the regulation was deleted. During this 25-year period, however, tips received

by an employee were never treated by the Commission as a factor in computing premiums or compensating unpaid employees.

Jordan is engaged in the restaurant business and as part of the operation of his restaurant, he employs waitresses. The waitresses, in addition to receiving wages paid by Jordan, receive tips from restaurant patrons.

Following the adoption of the tips regulation, Jordan applied to the Commission for a hearing for the purpose of determining whether the July, 1966 tips regulation should be set aside or vacated. A.R.S. § 23–945 and § 23–946. The Industrial Commission entered its order on 24 March, 1967, denying Jordan's petition and ruling that the tips regulation is "declared valid and in full force and effect". Jordan then instituted an action in the Superior Court against the Commission to vacate the July 1966 regulation. A.R.S. § 23–946, subsec. A. The case was presented to the Superior Court upon stipulated facts in the form of allegations contained in the complaint which were admitted in the answer. The Superior Court granted Jordan's motion for summary judgment and ordered that the Commission's tips regulation insofar as it related to tips received from customers be vacated and set aside. The Commission filed a timely notice of appeal on 21 July, 1967. Jurisdiction of this Court is found in A.R.S. § 12–120.21; Industrial Commission v. Harbor Insurance Co., 101 Ariz. 578, 422 P.2d 694 (1967).

A.R.S. § 23–946 relates to actions in which the invalidity of a Commission order is asserted, and provides, in part, as follows:

"Any person in interest dissatisfied with an order of the commission may commence an action in the superior court * * * against the commission as defendant to set aside, vacate or amend the order, on the ground that the order is unreasonable or unlawful, and the superior court shall have exclusive jurisdiction thereof."

The Commission contends that the order vacated by the Superior Court was adopted pursuant to an express grant of authority to the Commission by A.R.S. § 23–922 and that the order was not "unlawful or unreasonable".

Jordan urges that although the Commission has authority to adopt rules and regulations fixing rates, such authority is limited and that the Commission may not adopt rules and regulations which conflict with the Workmen's Compensation Act. It is contended that by directing the inclusion of tips in assessing premiums the Commission has exceeded the statutory perimeters of the Act, and therefore the order is unlawful.

The power of the Commission to adopt rules and regulations is found in A.R.S. § 23–922, which is as follows:

"The commission may adopt rules of procedure, rules for fixing rates and for presenting claims and other rules and regulations necessary to conduct its business. The commission may change such rules and regulations from time to time."

■ The rule making power of the Commission is limited, however, since the Commission may not adopt rules and regulations which enlarge the scope of the Workmen's Compensation Act or which violate any standards of the Act. Bade v. Drachman, 4 Ariz.App. 55, 417 P.2d 689 (1966); Southern Pacific Co. v. Cochise County, 92 Ariz. 395, 377 P.2d 770 (1963); Haggard v. Industrial Commission, 71 Ariz. 91, 223 P.2d 915 (1950); Duncan v. Krull Co., 57 Ariz. 472, 114 P.2d 888 (1941).

The question which we must determine is whether the tips regulation adopted by the Commission was a proper exercise of the Commission's rule making powers.

The statutory standards with which we are here concerned in determining the lawfulness of the tips regulation are set forth in A.R.S. § 23–1002, § 23–1003, § 23–1041, and § 23–983, 8 A.R.S.

A.R.S. § 23–1002 relates to the payment of premiums and is, in part, as follows:

"Except as otherwise provided, every employer, except the state, who has insured in the state's compensation fund shall semi-annually pay into the state

compensation fund the amount of premium determined and fixed by the commission for the employment or occupation of such employer."

A.R.S. § 23–1003 indicates that the basis for the Commission's determination of premiums is employee wages. That provision relates to adjustment of premiums and is quoted later in this opinion.

A.R.S. § 23–1041 requires that an injured employee receive compensation on the basis of his average monthly wage:

"Every employee of an employer within the provisions of this chapter who is injured by accident arising out of or in the course of employment, or his dependents in event of his death, shall receive the compensation fixed in this chapter on the basis of such employee's average monthly wage at the time of injury."

■ It is clear from the above quoted portions of the Act that the basis for assessing premiums and for compensating injured employees is the wage the employee received from the employer.

A.R.S. § 23–983 provides that:

"The state compensation fund shall be neither more nor less than self-supporting."

As applied to the instant case this means that tips received by an employee may be included in the wage base for computing premiums only if the law permits the inclusion of tips for compensation purposes.

The validity of the tips regulation turns upon the question whether tips come within the purview of "wages" as such term is used as a basis for computing premiums and compensation awards.

■ We are of the opinion that the tips regulations, insofar as it relates to tips, exceeds the rule making powers of the Commission and is an unlawful exercise of legislative authority, for two reasons:

(1) The term "wages", as such term is used as a basis for computing premiums and for making compensation awards, has been judicially interpreted in such a manner as to exclude tips; and

(2) The Workmen's Compensation Act, when read as a whole, indicates a legislative intent that the assessment of premiums be based on the wage—expenditure of the employer, and not on earnings received by an employee from non-employer sources, such as tips.

It is to be noted that while A.R.S. § 23–1041, subsec. A expressly establishes "average monthly wage" as the basis for computing compensation awards, the statute is silent with reference to what forms of remuneration shall come within the purview of the term "wage".

However, the term "wage" has been defined by judicial interpretation. In Barron v. Ambort, 64 Ariz. 209, 167 P.2d 925 (1946) our Supreme Court was confronted with the question whether "commissions" received by an employee pursuant to an oral employment contract constituted part of the employee's wage for compensation purposes. The employee died from injuries sustained while working for a dairy. While employed by the dairy and pursuant to an oral agreement the employee was paid $75 per month wage plus a 4% commission on all sales. The Industrial Commission entered its award granting compensation on the basis of the $75 month wage only. On appeal the Arizona Supreme Court vacated the award, holding that the Commission should have based its award on both the $75 monthly salary and commissions received by the employee, because it was the intent of the employer and employee that the commissions constitute part of the employee's wage. The Court reasoned as follows:

"There can be no question that the 4% commission was as much a part of the wage of the deceased as the $75 which he was to be paid. The agreement, as we understand it, was for $75 plus 4% commissions. These commissions were the result of the personal efforts of the deceased, and were his earnings and wages."

* * * * * *

"The commissions here were in no sense a bonus in the nature of a gratuity or an

amount allowed from the profits of the business, which might or might not be paid to the employee. It is our view, however, that whether the earnings are denominated bonus or commissions, if they are the result of the personal efforts of the employee and would be recoverable in an action at law, they constitute wages or earnings."

In Beaman v. Westward Ho Hotel Co., 89 Ariz. 1, 357 P.2d 327, 83 A.L.R.2d 1018 (1960), the Supreme Court was faced with the question whether certain "service charge" payments received by a restaurant and subsequently paid out to its employees constituted "wages" as defined by the Employment Security Act. The service charge payments resulted from the restaurant's policy of adding 15% to the amount of the patrons' check. The total amount was paid to the restaurant. The maitre d' then distributed portions of the 15% charge to the individual employees who provided service to the patron. Our Supreme Court held that the service charge payments came within the purview of the broad language of the Employment Security Act's definitions of wages since the payments were a form of "remuneration for services from whatever source."

In its opinion, the Court made it clear that it was not passing upon the question whether "tips" constituted "wages" within the meaning of the Employment Security Act. The Court also made it clear, however, that the service charge payments were not tips:

"Whatever the payments in question here may be, they are not tips. They are not in any sense gratuitous. The patron does not control the amount, if any, to be given the one who waits on him. It does not even have anything to say about who shall share in the distribution of the money. * * * A tip is in law, if not always in fact, a voluntary payment. It is not the subject of negotiation or contract, as are the 'service charges' here. * * * We state this to make it clear that we do not in this case rule on wheth-er ordinary tips, being gratuitous payments made by a patron at his election, in amounts which he determines, to persons of his choice, are wages on which contributions must be paid by the employer. That question is not now before us."

The Court further noted that the service charges did not resemble wages because "[t]he usual significant hallmark of wages—a legal obligation in the employer to pay them—is missing". The Court nevertheless ruled that since the Employment Security Act expressly defined the term "wages" in broadly inclusive language the "service charges" constituted wages.

We recognize that both the Ambort and Beaman cases involved remuneration received by an employee directly from the employer, as distinguished from tips received by an employee directly from patrons as in this instance. We also recognize that, unlike the present case, the Beaman decision turned upon a broadly worded statutory definition of the term "wages". Nevertheless, it is our opinion that the Court's definition of "wages" in Ambort and of "tips" in Beaman is analytically sound and applicable in the matter before us.

■ Applying the definition of "wages" in Ambort to that of "tips" in Beaman, it is our opinion that since "tips" are clearly not a form of remuneration subject to negotiation or recoverable in an action at law, they do not come within the purview of "wages" within the meaning of the Workmen's Compensation Act.

Aside from our opinion that past definitive statements of our Supreme Court necessarily exclude "tips" from the term "wages", it is also our opinion that the Workmen's Compensation Act, when read as a whole, indicates a legislative intent that tips were not to be included as a factor in assessing premiums. The following provisions of the Act indicate that premiums are to be assessed on the basis of an employer's wage expenditure or payroll, as distinguished from earnings received by

an employee from sources other than the employer.

A.R.S. § 23–1003 relating to semi-annual adjustment of premiums, is in part as follows:

"If the amount of premiums collected from an employer at the beginning of a period of six months is based on the estimated expenditure of wages for the ensuing six-month period, an adjustment of the premium shall be made at the end of such period, and the actual amount of the premium determined in accordance with the amount of the actual expenditure of wages for such period. If the wage expenditure for the six-month period was less than the amount estimated, the employer shall receive a refund from the fund of the difference between the amount paid by him and the amount found due, or shall have the difference credited on succeeding payments, at his option."

A.R.S. § 23–965 provides that the state compensation fund shall have a lien against certain interests of an employer who defaults in payments of premiums to the fund. Subsection D of A.R.S. § 23–965 provides:

"In order to avail itself of the lien, the commission shall, within three months after the employer has reported his payroll * * * [record] * * * a statement in writing describing in general terms the property upon which the lien is claimed * * *. If any employer fails, delays or refuses to report his payroll, the lien shall continue in full force and effect * * *."

A.R.S. § 23–926 is as follows:

"A. All books, records and payrolls of the employer showing or reflecting in any way the wages expenditure of the employer shall always be open for inspection by the commission or its assistants to ascertain information necessary for its administration of the law."

A.R.S. § 23–984 is as follows:

"An employer who misrepresents to the commission the amount of payroll upon which the premium to be paid to the compensation fund is based is liable to a penalty of ten times the amount of the difference in premium paid and the amount the employer should have paid. * * *"

Each of the foregoing provisions indicates a legislative intent that the assessment of workmen's compensation premiums is to be based on wage expenditures or the payroll of the employer, and not on gratuities received by employees from patrons of the employer.

Jordan suggests that the Employment Security Act is to be read in pari-materia with the Workmen's Compensation Act, and directs our attention to a 1947 amendment of the Employment Security Act, deleting specific language relating to "gratuities" from the Employment Security Commission's definition of wages. It is contended that when the Employment Security Act, as amended in 1947, is read in pari-materia with the Workmen's Compensation Act, tips must be excluded from wages.

Although we decline to express an opinion with reference to whether the Workmen's Compensation Act and the Employment Security Act are to be read in pari-materia, we do find it significant that the deletion of gratuities from the Employment Security Act's definition of "wages" was effectuated by legislative action and not by administrative regulation, as in this instance. It is our opinion that assessment of premiums and payment of compensation by the Commission on the basis of wages inclusive of tips is a matter requiring legislative action.

For these reasons we hold that the July 1966 order of the Commission directing the inclusion of tips as part of the basis for assessing premiums was an unlawful exercise of legislative authority by the Commission. The judgment of the trial court is affirmed.

CAMERON, C. J., and DONOFRIO, J., concur.