641 P.2d 877

**SENOR T'S RESTAURANT,**
Petitioner Employer,

**American Motorists Insurance Company,**
Petitioner Carrier,

v.

**The INDUSTRIAL COMMISSION OF
ARIZONA, Respondent,**

**Ellen Osgood, Respondent Employee.**

No. 1 CA–IC 2388.

Court of Appeals of Arizona,
Division 1, Department C.

Aug. 18, 1981.

Rehearing Denied Oct. 7, 1981.

Review Granted Oct. 27, 1981.

Jennings, Strouss & Salmon by Steven C. Lester, Phoenix, for Petitioners.

Calvin Harris, Chief Counsel, The Industrial Commission of Arizona, Phoenix, for respondent.

Law Offices of Chris T. Johnson, P. C. by Dennis R. Kurth, Phoenix, for respondent employee.

OPINION

FROEB, Judge.

The issue in this Special Action—Industrial Commission is whether the administrative law judge correctly based an injured waitress's compensation claim not only on the monthly amount she was paid by her employer, but also on the tips she received from customers. We find that he was correct and affirm the award.

On September 8, 1978, the respondent employee, who worked as a cocktail waitress, sustained an industrial injury which was accepted for benefits by a notice of claim status issued October 9, 1978. On December 7, 1978, the Industrial Commission found the claimant's average monthly wage to be $452.80. A request for hearing was subsequently filed and granted. On January 22, 1980, the administrative law judge issued his findings and award which concluded that the claimant's average monthly wage was $817.05. This award was based on *Scott v. Industrial Commission*, 122 Ariz. 169, 593 P.2d 919 (App.1978), which held that tips are part of the average monthly wage. After a request for review, the administrative law judge affirmed his decision.

In this special action, petitioners employer and carrier raise three issues. First, they argue that fundamental legal analysis requires *Scott v. Industrial Commission* to be overruled. Next, they contend that application of *Scott* is unconstitutional because insurance regulations in Arizona allow premiums to be based only on wages paid by the employer, whereas insurance carriers must pay claims which are based on both wages and tips. Finally, they contend that *Scott* should not be retroactively applied to the present case since the injury occurred before *Scott* was decided.

The issue of whether tips are to be included in the computation of the average

monthly wage arises by reason of A.R.S. § 23–1041 which states, in relevant part:

A. Every employee of an employer within the provisions of this chapter who is injured by accident arising out of and in the course of employment, or his dependents in event of his death, shall receive the compensation fixed in this chapter on the basis of such employee's average monthly wage at the time of injury.

. . . .

D. The term "monthly wage" means the average wage paid during and over the month in which the employee is killed or injured.

This court initially interpreted "monthly wage" as not including tips. *Industrial Commission v. Jordan*, 9 Ariz.App. 23, 448 P.2d 895 (1968). The issue arose in that case when Jordan questioned the legality of an Industrial Commission regulation which stated that the basis of the insurance premium charged by carriers to employers was to include tips and gratuities if a regular record was kept.[1] The court, in deciding that issue, necessarily had to determine if tips were included in monthly wages for compensation purposes. As the court stated:

[T]ips received by an employee may be included in the wage base for computing premiums only if the law permits the inclusion of tips for compensation purposes.

The validity of the tips regulation turns upon the question whether tips come within the purview of "wages" as such term is used as a basis for computing premiums and compensation awards.

9 Ariz.App. at 26, 448 P.2d 895. The court found that tips were not includable for compensation purposes and therefore held that the regulation was invalid. This conclusion was based upon the court's finding that the "assessment of premiums and payment of compensation by the Commission on the basis of wages inclusive of tips is a

matter requiring legislative action." 9 Ariz.App. at 28, 448 P.2d 895.

In 1975, with one judge dissenting, the court in *Springer v. Industrial Commission*, 23 Ariz.App. 429, 431, 533 P.2d 1166, 1168 (1975), found "nothing in petitioners' argument which persuades us to abandon the holding in *Jordan*." Both *Jordan* and *Springer* were denied review in the supreme court.

Then, in 1978, the court of appeals in *Scott v. Industrial Commission* reversed its position, with one judge dissenting, and overruled *Jordan* and *Springer*. This result was reached, the court stated, because it was "not only consistent with the workmen's compensation law of most other jurisdictions" but was "consistent with the humanitarian policy of our own workmen's compensation statute to compensate for financial loss due to industrial injuries." 122 Ariz. at 172, 593 P.2d 919. The supreme court initially granted review of *Scott*, but later vacated that order after finding review had been improvidently granted.

Petitioners now urge us to overrule *Scott* and return to *Jordan*, thereby disallowing tips as a component of wages. We decline to do so, not because we agree that tips ought to be included in computing a worker's average monthly wage, but because the principle of stare decisis should now be followed on this question. We agree with the court in *Jordan* that the issue is legislative in nature and that it should be addressed in the legislative process. Nevertheless, *Scott* held to the contrary and we follow it out of a sense of judicial restraint and appropriate deference to a matter already decided.

The petitioners next argue that application of *Scott* is unconstitutional because carriers are deprived of property without due process of law. The contention is based on the fact that insurance regulations do not permit carriers to assess premiums based on an employee's tips. Therefore, petitioners argue, carriers are able to

---

1. At the time *Industrial Commission v. Jordan* was decided, the Industrial Commission was empowered to set workmen's compensation rates for insurance carriers. In 1969, the laws were amended to transfer this power from the Industrial Commission to the Department of Insurance. 1968 Ariz.Sess.Laws, ch. 6, § 1.

charge premiums based on only the employee's actual wages but are required to pay claims based on tips in addition to wages. Although we recognize the carriers' dilemma, the solution to that problem must be found elsewhere than in the review of this workmen's compensation award.

When the Department of Insurance adopted the national *Manual of Rules, Classifications, and Rates for Workmen's Compensation and Employer's Liability Insurance*, it specifically amended rule VI, section 3 (allowing for tips within the premium calculation process) so that, in Arizona, tips are not included. The petitioners note that this change was made so that the regulation of the Department of Insurance was consistent with Arizona law as declared in *Industrial Commission v. Jordan*. As previously indicated, the *Scott* decision changed the law in Arizona but no conforming change in regulation has been made by the Department of Insurance. It is a matter for administrative action by the Department of Insurance to provide for any further change in its regulation.

The petitioners' final argument is that *Scott* should not be retroactively applied to injuries occurring before the December 1, 1978, date of that decision. *Scott*, however, specifically states that its ruling is retroactive except as "to claims closed prior to this day [December 1]." In adhering to *Scott*, we follow its ruling as to retroactive application.

For the foregoing reasons, the award is affirmed.

O'CONNOR, J., concurs.

WREN, Chief Judge, specially concurring:

I concur with the conclusion reached here simply because *Scott* appears to be the better course for us to follow at this particular stage of our multifarious judicial inquiry into this troublesome area. However, I question whether the doctrine of stare decisis is the appropriate route to take us to that conclusion. As stated in my dissent in *Scott* and noted by the other judges in this opinion, the problem in *Scott* called for legislative, not judicial, action.

Since the correct procedure was not used, we now have a strange anomaly. *Scott* was decided by a different department of this court than that which determined *Jordan*, and yet the *Scott* court specifically stated that it was overruling *Jordan*. The court which now attempts to resolve the issue is comprised of yet a third department of judges from the court of appeals. We have thus, in my opinion, placed the law of "tips" in workmen's compensation cases in "suspended animation."

Considerable research has revealed no authority that one department or division of an intermediate appellate court may overrule a decision of another department or division. The subsequent court may follow the prior decision, or refuse to follow it, but I submit there is no power to *overrule* it, since they are coordinate courts. *See* the discussion in 21 C.J.S., *Courts* § 196 *et seq.* Thus, both *Scott* and *Jordan* remain, at this time, viable, albeit conflicting decisions. To which, then, should the doctrine of stare decisis apply—to *Jordan*, which formulated the point of law in the first instance, and which has been recognized in this opinion as the preferred authority; or *Scott*, which improperly overruled it? In my opinion, stare decisis cannot be invoked to sanction as authority a subsequent decision of a coordinate court simply because it purports to have overruled the prior decision.

Recognition of the principle that the various departments of this court are "coordinate courts" was made in *Castillo v. Industrial Commission*, 21 Ariz.App. 465, 520 P.2d 1142 (1974) when Judge Haire, writing for Department B, referred to *Terrell v. Industrial Commission*, 21 Ariz.App. 139, 517 P.2d 97 (1973) (Department A), as a prior conflicting decision of a coordinate court which "we [Department B] decline to follow."[1]

---

1. Judge Eubank, who had concurred in *Terrell*, filed a special concurrence in *Castillo* which concluded: "It is hoped that our Supreme Court will consider this question and once and for all put it to rest."

I certainly agree that we should give what this opinion seeks—judicial "deference to a matter already decided,"—and for that reason I choose to join in the result. This decision, however, may well compound the error already made.

The problem of tips and the need for their inclusion has been so obvious it is difficult to understand why the legislature has not moved in the direction of *Scott.* Now, only legislative action or review by the state supreme court can solve the dilemma.

FROEB, Judge, specially concurring:

A fundamental question concerning the controlling effect of decisions of this court is raised by Judge Wren which compels me to address the subject in a separate concurring opinion because of its importance.

In Judge Wren's opinion, if there are conflicting decisions between departments of the court of appeals, both decisions remain the law since one department may not overrule another. The *Scott* and *Jordan* cases discussed in the majority and concurring decisions of this case are examples. I disagree with Judge Wren's conclusion and would hold that a later decision overrules an earlier decision. *Accord, Mattis & Yalowitz, Stare Decisis Among [Sic] the Appellate Court of Illinois,* 28 DePaul L.R. 571 *passim* (1979). In my opinion this must be the result if decisions interpreting the law of Arizona in this court are to have any effect whatsoever in declaring the law and providing guiding precedents for the superior courts and the citizenry of Arizona.

Recognizing that the Arizona Supreme Court is the final arbiter of the law in Arizona, the court of appeals nevertheless has the duty and responsibility of declaring the law in Arizona in the absence of supreme court precedent. A great percentage of cases in this court are not reviewed by the supreme court and therefore reflect the declared law of Arizona by which trial courts, lawyers, and the citizenry are guided. In my opinion, this institutional function is rendered meaningless, even chaotic, if the last decision on a legal issue does not overrule an earlier conflicting decision.

The thesis which apparently is at the bottom of Judge Wren's conclusion is that judges of the court of appeals exert equal authority in rendering decisions and therefore three judges in one department cannot overrule the decision of three judges in another department. I disagree. While it is true that the judges of the court of appeals exert equal authority, the voice which declares the law in this court is a single voice by statute. This is, of course, a reference to A.R.S. § 12–120(A) which states, "There is created a court of appeals which shall constitute a single court . . . ."

It is not difficult to resolve this issue if a correct perspective is applied. One important consequence of a decision of the court of appeals is that it establishes precedent for the superior court to apply to litigants before it. This rule of stare decisis is "grounded on public policy that people should know what their rights are as set out by judicial precedent and having relied on such rights in conducting their affairs should not have them done away with by judicial fiat." *White v. Bateman,* 89 Ariz. 110, 113, 358 P.2d 712, 713 (1961). To me, this is such a vital policy that it requires the superior court or administrative body to follow a single precedent with certainty rather than to choose which among conflicting precedents it will follow. The latter approach is untenable in every respect.[1] Carried to an extreme it would mean that judges of the court of appeals exerting equal authority would by their conflicting decisions not only confuse the law but destroy precedent in the process.

If one department of the court can overrule another department, the principle of stare decisis is strengthened not weakened. It is the overruling process which gives

---

1. "To apply the principle of optional selectivity by a trial court in such situation could create an anomalous situation where the trial court one week would follow one principle and the following week, a contrary principle." *Garcia v. Hynes & Howes Real Estate, Inc.,* 29 Ill. App.3d 479, 482, 331 N.E.2d 634, 636 (1975).

meaning to stare decisis. Stare decisis is a rule of persuasion, *O'Neil v. Martin*, 66 Ariz. 78, 182 P.2d 939 (1947), and a court will overrule its precedent only if presented with the most cogent reasons. It operates wisely in the multi-judge court of appeals because three judges will not overrule a prior decision on the same point for other than the most cogent reasons. On the other hand, if the overruling process is not at work, what rein is there to prevent each department of three judges from simply deciding issues as they see fit at the moment, knowing that they merely record their views upon the records of the court, leaving untouched a prior conflicting decision of another department? To me, the result is a garbled judicial voice which destroys our institutional role and reduces the court to a mere case-by-case, error-correcting function based upon shifting sands of authority.

On the other hand, the principle of stare decisis is well served where one department is disposed to follow an earlier precedent except where disagreement flows from the most cogent of reasons. The stability and credibility of the court as a court is enhanced and its precedents furnish a proper guide to the superior court. Where a department decides to depart from precedent, it does so with the realization that the law changes with its ruling. Review by the supreme court is a check against serial overruling by departments in instances where judges of the court of appeals are seriously divided on an issue.

Neither the Arizona Supreme Court nor the Arizona Court of Appeals has spoken directly to the issue at hand. In an opinion filed by Division One of the court of appeals, it was said, "When we disagree with a prior decision of our Court, whether rendered by our own Division or by our fellow Judges in Division Two, we should do so only upon the most cogent of reasons being presented." *Neil B. McGinnis Equipment Co. v. Henson*, 2 Ariz.App. 59, 62, 406 P.2d 409, 412 (1965). Another Division One opinion states, "As a threshold matter, we note that while we would not be absolutely bound by prior Court of Appeals decisions,

the principle of *stare decisis* and the need for stability in the law in order to have an efficient and effective functioning of our judicial machinery dictate that we consider decisions of coordinate courts as highly persuasive and binding, unless we are convinced that the prior decisions are based upon clearly erroneous principles, or conditions have changed so as to render these prior decisions inapplicable." *Castillo v. Industrial Commission*, 21 Ariz.App. 465, 471, 520 P.2d 1142, 1148 (1974).

There is authority from other states that a lower court, when confronted with conflicting appellate decisions in the jurisdiction in which it sits, must follow the later case. *See, e.g., Moeller v. De Rose*, 222 P.2d 107 (Cal.App.1950); *State v. Hill*, 239 Iowa 675, 32 N.W.2d 398 (1948); *Goodman v. Mevorah*, 59 N.W.2d 192, 79 N.D. 653 (1953); *Tuggle v. Davies*, 232 S.W.2d 16, 191 Tenn. 152 (1950); *Ballard v. Ballard*, 296 S.W.2d 811 (Tex.Civ.App.1956). Where this rule is followed, the earlier case is overruled whether or not the later case so states. *De Luxe Glass Co. v. Martin*, 116 Utah 144, 208 P.2d 1127 (1949). As stated in one treatise:

> [T]he general rule is to follow the latest decision and disregard the others. This is because the later case must be supposed to have overruled the earlier and to stand as the final expression of the court's opinion.

*Black, Law of Judicial Precedents* § 70.

Although there is no difficulty in applying this rule to conflicting decisions of departments of Division One of the court of appeals, a special problem is presented by conflicting decisions between Division One and Division Two of the court of appeals. I would not apply the same rule in this instance as I believe the organization of the court dictates otherwise. All departments of Division One hear appeals from superior courts in the same jurisdictional area consisting of seven of fourteen counties. Division Two hears appeals from the other seven counties. Although A.R.S. § 12–120(A) states that the court of appeals is a "single

court," the same statute also creates this jurisdictional distinction. Because of this distinction, I would hold that given conflicting decisions between Division One and Division Two, the superior court must follow the decision of the division in which it is located. In my opinion, the reasons for this outweigh the argument that the court is a single court and a later conflicting decision of one division overrules an earlier decision of the other division. The fact of separate county constituencies points to a hierarchic relationship between a division of the court of appeals and the superior courts sitting within a particular division. The physical separation of Division One and Division Two makes it impossible for collegial discussion to occur, so necessary for an appellate court. This is in contrast to the continuous exchange and colloquy over legal issues which occurs between the judges of Division One who sit at one physical location. By this means the process of precedent-making and precedent-keeping within Division One is vitalized. This process is not possible and therefore does not occur between Division One judges and Division Two judges. Finally, predictability in the decisional process is greatly enhanced when it is known to the superior court that the decision of the division in which it is located will provide the controlling precedent.

It must be acknowledged, however, that an unsatisfactory side effect of conflicting decisions between divisions is that Arizona law as applied in the northern seven counties may differ on a given point from that which is applied in the southern seven counties. *See Mattis & Yalowitz, supra.* This is the price paid for an intermediate appellate court sitting in two divisions, however, and is not a serious problem because such relatively rare conflicts are easily resolved by the Arizona Supreme Court.

In conclusion, I would hold that between conflicting decisions of departments within Division One of the court of appeals, the last decision expresses the law and the earlier decision is overruled. By reason of the realities and practical necessities involved, I would hold that between conflicting decisions of Division One and Division Two,

each expresses the law to be applied by the superior courts located in the geographical area of each respective division until overruled by the Arizona Supreme Court.