Before STATE INDUSTRIAL COMMISSION, Respondent.

In the Matter of the Claim of MAUDE J. SLOAT and Son, Respondents, for Compensation to Themselves under the Workmen's Compensation Law for the Death of WARREN SLOAT, *v.* ROCHESTER TAXICAB COMPANY, Employer, and LONDON GUARANTEE AND ACCIDENT COMPANY, Insurance Carrier, Appellants.

Third Department, March 7, 1917.

Workmen's Compensation Law — determination of average weekly wages of employee — when tips may be considered.

Tips received by a driver employed by a taxicab company may be considered in determining his average weekly wages, where it appears that they were so considered by both the employer and employee when the contract of employment was made.

APPEAL by the defendants, Rochester Taxicab Company and another, from an award of the State Industrial Commission, entered in the office of said Commission on the 23d day of May, 1916.

*William Butler,* for the appellants.

*Egburt E. Woodbury, Attorney-General* [*E. C. Aiken, Deputy Attorney-General,* of counsel], and *Robert W. Bonynge,* for the respondents.

KELLOGG, P. J.:

The only question presented by this appeal is whether in determining the average weekly wages of the employee the tips received by him can be considered. It was stipulated that "there was a custom existing in the City of Rochester whereby users of taxicabs, upon paying their fare, gave to the drivers gratuities or tips, which is an amount in addition to the fare, and for the personal use of the driver; that such custom was known to the employer at the time he employed Warren Sloat to enter his service; that the average amount of tips so received * * * was the sum of 85¢ a day, which sum he was allowed to keep for his own use, and was not required to account to his employer for the same."

The regular wages of the deceased employee, paid by the employer, was twelve dollars a week; the tips averaged five dollars and ten cents a week, making the total earnings seventeen dollars and ten cents a week, which the Commission adopted as the basis of the award. Upon the argument each party, apparently with approval, referred to the English case of *Penn* v. *Spiers & Pond, Ltd.* (1 B. W. C. C. 401), where it was held that the tips received by a waiter in a restaurant car were a part of his earnings to be taken into consideration in fixing the basis for compensation.

The appellants distinguish the *Penn* case from this case by referring to the terms of the English act which bases the compensation upon earnings, while our Workmen's Compensation Law, at section 14, provides: "Except as otherwise provided in this chapter, the average weekly wages of the injured employee at the time of the injury shall be taken as the basis upon which to compute compensation or death benefits, and

shall be determined as follows," making the average weekly wages the basis upon which the compensation is computed. The word "wages," as defined by subdivision 9 of section 3 of the law, "means the money rate at which the service rendered is recompensed under the contract of hiring in force at the time of the accident, including the reasonable value of board, rent, housing, lodging or similar advantage received from the employer." It is urged that these tips were received, not from the employer as wages, but from the patrons of the taxicab, as a gratuity or gift to the driver.

We must give further attention to section 14. In three of its five subdivisions it speaks of the "average annual earnings" and the "annual average earnings" of the employee, indicating that the Legislature saw no broad distinction between the word "earnings" and the word "wages," and under the facts of this case no distinction between them is apparent. The employer and the employee knew that an average of about eighty-five cents per day would be received from tips, and clearly the compensation paid by the employer was based upon that assumption. If the employee had turned the tips over to the employer, as probably would have been his duty in the absence of an understanding to the contrary, the wages of the employee undoubtedly would have been seventeen dollars and ten cents a week. If the employee receives from the employer twelve dollars and retains the five dollars and ten cents tips, he is getting through or from the employer seventeen dollars and ten cents per week, and if the employer paid the employee seventeen dollars and ten cents a week and the tips were turned over to the employer, the result to each would be the same. Neither the employer nor employee contemplated that the employee should receive but twelve dollars per week for his services; each expected that he would receive on an average seventeen dollars and ten cents per week.

The employee could not have received the tips if the employer had not put him in the way of getting them, and we may well conclude that the tips were an advantage received from the employer similar in effect to board, lodging or rent furnished in addition to the money wages paid. Many times a guest at a hotel, a passenger upon a sleeper or a person receiving

service from the employee of another, is glad to recompense a pleasing manner or an extra service by a reasonable tip; but according to the present custom tips are not usually the voluntary act of the person who gives them. The employee with the knowledge and consent of the employer, furnishes a service which compels the payment of a tip, and if the tip is not paid the service is so grudgingly and unsatisfactorily given that the person served is willing to pay it the next time. The person rendering the service considers that the tip is his as matter of right and involves no particular favor; an extra large tip may be appreciated, but the ordinary tip is considered a payment of money actually due. The usual tips have come to be considered a part of the cost of the entertainment at a hotel, upon a sleeper or public conveyance, and it is realized both by the person paying and receiving them that it is a part payment of the wages which the employer compels the person served to pay. In effect, therefore, the employer and not the employee alone is benefited by the tip usually paid. (It is common knowledge that porters on sleeping cars are employed at inadequate wages and that the employer and employee recognize that the great part of the service rendered by the employee is to be paid by the patrons of the company.) (The same is true as to waiters in the restaurants and the attendants at the hat stands, the bell boys and others serving patrons at hotels. The tip is so usual and the amount so uniform that the employer and employee realize about how much in addition to the tips it will be necessary for the employer to pay the employee to give him reasonable compensation. The whole theory of tipping, as at present understood in the usual practice, is a payment made in order to get reasonable service, and is an exaction made or permitted by the employer so that his patrons shall help him pay the wages which are fairly due from him to his employee. The custom and the manner in which the payment of tips is enforced and practiced leads inevitably to the conclusion that in substance the tips received are a part of the wages of the employee, and are advantages received by the employee from the employer as a part recompense for services rendered.

The court should treat these tips in the same manner in which the employer and employee treat them, as a part of the com-

pensation to be received by the employee for the services rendered the employer — a part of the wages, a part of the average annual earnings of the employee.   We conclude that the award should be affirmed.

Award unanimously affirmed.