280 P.2d 273

**INSPIRATION CONSOLIDATED COPPER COMPANY, a corporation, Petitioner,**

v.

**Jerry B. SMITH, and The Industrial Commission of Arizona, Respondents.**

No. 5936.

Supreme Court of Arizona.
March 1, 1955.

356

Edward W. Rice, Globe, for petitioner.

Robert K. Park, Phoenix, for respondent The Industrial Commission of Arizona.

John R. Franks and Donald J. Morgan, Phoenix, of counsel.

PHELPS, Justice.

This case comes to us by certiorari to set aside an award of the Industrial Commission in favor of respondent Jerry B. Smith who claims he suffered an injury to his back on January 5, 1951, while in the employment of petitioner. The facts will be hereinafter more particularly set forth.

On the date the injury is claimed to have occurred respondent was working with and under the supervision of one Guy E. Ford who, according to petitioner's testimony, on that date made out, in part, an accident report which was completed by one Sylvan Lunt, Chief Clerk in the employment office of petitioner. Counsel for the commission states in his brief that this report was filed with both the petitioner and the commission. We are unable to find any such report in the files presented here for our review. There is a report filed by Dr. C. T. Collopy, a member of the medical staff of petitioner, on January 9, 1951. This report in no way corresponds with the description of the report claimed by counsel to have been filed on January 5.

After the close of the shift on the date of the injury respondent states that he went to the company hospital and saw Dr. Collopy who described the injury as "slight limita-

tion of motion in all directions, tenderness of paraspinous muscles leaving no permanent defect," and prescribed trigisig tablets (a pain killer) and hot applications. Respondent continued to perform his regular work as an underground electrician until August 28, 1952, without material loss of time from the injury. On that date he quit his job with petitioner stating that he had secured employment elsewhere. However, he went to visit members of his family at his old home in Kentucky where he visited for two or three months.

He then procured work with the North American Aviation Company at Columbus, Ohio, where he worked for several months as an electrician and then went to Detroit where he was employed as a car inspector by the Dodge Motor Corporation for about a month. He then returned to Miami and procured employment with the Miami Copper Company as an electrician. He worked there from February 24, 1953, to September 12 of that year. Respondent testified he went to the company hospital in April, 1953, and complained of low back pains and ascribed his back ailment to the accident and injury of January 5, 1951. Doctor Harris x-rayed or had x-rayed his back in the lumbar area which revealed nothing and at that time Doctor Harris gave respondent "some shots in the back."

Thereafter on September 12, 1953, respondent quit work because of the disabling back condition and a couple of days later called on Doctor Mark Wall, M. D., of Mesa who hospitalized him and referred him to Doctor John R. Green of Phoenix who diagnosed his complaints as stemming from a herniated disc. On September 21 Doctor Green and Doctor Alvin L. Swenson whom Doctor Green had called in for consultation, performed operations upon respondent correcting his injuries. The operation by Doctor Green confirmed his diagnosis that respondent was suffering from a herniated disc. Following the laminectomy by Doctor Green a lumbar sacral fusion was performed by Doctor Swenson for the purpose of stabilizing respondent's back at that point. After recovering from these operations respondent was discharged as being able to resume his employment and about the middle of January, 1954, returned to work for the Miami Copper Company which he had continued to the date of the hearing before the commission of February 2, 1954.

On September 29, 1953, respondent filed his claim with the Industrial Commission for compensation for the injuries suffered by him on January 5, 1951, while employed with petitioner. This is the first claim filed for compensation by the respondent with the commission for that injury. On November 5, 1953, the commission made its finding and award denying compensation to respondent upon the ground that his injury was not attributable to the accident of January 5, 1951.

On November 16, 1953, respondent by his attorney filed what is designated as a "No-

tice of appeal from findings and award on petition and application for readjustment or reopening of claim and denying further benefits." Just what this is intended to encompass we are unable to determine. It is directed at the findings and award of November 5, 1953, which is not predicated upon "a petition and application for readjustment or reopening of a claim." Whatever jurisdiction the commission had in the premises had its source in the original petition bearing date September 18, 1953, and filed by the respondent with the commission on September 29, 1953, as above set forth.

■ That petition was in no sense of the word an application to reopen the case upon the ground that there had been a change in the physical condition of petitioner subsequent to a previous award and that there had developed new and undiscovered disabilities since that award. There had been no previous award. The commission had not been vested with any jurisdiction in this case prior to September 29, 1953, when it undertook to assume jurisdiction on an original petition for compensation nor was it justified in finding that its award was based upon new and undiscovered disabilities arising out of changed physical condition. There was not a scintilla of evidence in the record to support that finding. In making an award the commission exercises a judicial function and it acquires no jurisdiction of a case until a formal application for compensation is filed with it. Wise v. Six Companies, Inc., 43 Ariz. 24, 28 P.2d 1007.

Section 56–967, A.C.A.1939, provides in part that:

"* * * No application shall be valid or claim thereunder enforceable unless filed within one (1) year after the day upon which the injury occurred or the right thereto accrued."

Clearly the application in the instant case was not made within one year from the date of injury. Section 56–967, supra, provides however, that if it is filed within one year from the date the right to a claim accrues it meets the requirement of the statute. The question here then is when did the right to file the claim accrue?

We said in Hartford Accident, etc., Co. v. Industrial Commission, 43 Ariz. 50, 29 P.2d 142, 144, that:

"We still hold that the claim must be filed within one year after the date of the injury if the injury is of sufficient magnitude to be compensable. But, if it is slight or trivial at the time and non-compensable and later on develops unexpected results for which the employee could not have been expected to make a claim and receive compensation, then the statute runs, not from the date of the accident, but from the date the results of the injury became manifest and compensable. Under section 1447 (56–967, A.C.A.1939) an employee is not required to file with the commission

an application for compensation until he is 'entitled to compensation.' The respondent was not entitled to compensation for the original injury because it did not permanently disfigure his face or incapacitate him to work. So of the other troubles resulting therefrom until the operation that resulted in a permanent disfigurement of his face. He was entitled to compensation when the later result was definitely known."

In that case the respondent received an injury to his lip seriously bruising it. Later a sabaceous cyst which was removed by surgery and later a squamous cell carcinoma appeared which was removed by operation and produced the disfigurement upon which the compensation was based. This court further held in Ison v. Western Vegetable Distributors, 48 Ariz. 104, 59 P.2d 649, 652, that:

"* * * It is not every accident nor every injury arising from an accident which is compensable. The theory of the law is that it is only injuries which produce financial loss to the injured party that are compensable. * * *"

and again in Engle v. Industrial Commission, 77 Ariz. 202, 269 P.2d 604, we adhered to this rule.

It will be necessary to examine the evidence in this case in order to ascertain when the right to file a claim accrued to respondent herein after the injury of January 5, 1951. In his testimony before the commission on February 2, 1954, respondent stated that in attempting to remove a bonding machine weighing "maybe 60 pounds" from the car tracks in the mine, when he picked it up and turned on his right foot to get away from the track before an approaching car reached him a pain hit him in his left hip and left back; that he had never been in an accident before and had never had any back or hip trouble before. He said after this happened he could stand up but could not stand straight; that his left hip was "about so many notches" higher than the right one and that is the way it left him. He said after the accident he could sit down but he "was crooked". A lot of days he could not wear his tool belt because his left hip was so much higher than the right hip that the belt hurt him badly. When asked if he was able to carry on his job he replied that he didn't carry the tools or anything, that all he did was just stay on the job. He stated that he worked all the way through like that. He would have to lay off a couple days at a time but that he was not off any amount of time. While visiting with his relatives in Kentucky for two or three months he did no work. He stated that he did not get any better at any time after the injury of January 5, 1951, but got worse all the time and kept going down. Intermittently for a week or so, he said, he did not suffer much and then the next week or so it would be the same thing except a little harder.

With respect to his condition while he was at his old home in Kentucky he was asked if he was able to get around during the time he remained there. He replied: "Just got around by dragging along is all." He was then asked the following questions by his counsel concerning his physical condition while he was working for North American Aviation at Columbus:

"Q. And was this disability that you had so remarkable that anyone would notice it to see you? A. Well, I had treatment for the while I was there.

\*   \*   \*   \*   \*   \*

"Q. I see. And in order that there will be no misunderstanding is your testimony to the effect that at that time when you would walk along that you limped perceptibly? A. I did.

"Q. And were you bent over? A. That's right.

"Q. And was that a continuous thing or was it occasional? A. It was a continuous thing at that time.

\*   \*   \*   \*   \*   \*

"Q. Did you have any trouble sleeping or eating or did you lose weight or anything? A. I didn't have trouble eating but I did sleeping. I didn't sleep very good. I could sleep one way then if I moved around it would wake me up."

The following questions were asked respondent on cross-examination by counsel for petitioner:

"Q. Besides these two jobs (meaning the North American Aviation and the Dodge Motor Corporation jobs) did you do any other work while you were absent? A. No other work whatsoever, no, Sir.

"Q. And was it on account of your back condition that you did not do any work, or why didn't you? A. That's right, I was just doing enough work to get enough money to come out here on.

\*   \*   \*   \*   \*   \*

"Q. And you were treated there you said by the doctors (meaning at North American Aviation)? A. That's right.

"Q. What for? A. Back injury or at least they used hot pads was the treatment I got."

Respondent passed the company examination at both North American Aviation and Dodge Motor Corporation. He told them when asked that he had suffered no previous injury.

After one month's work at Dodge Motor Corporation respondent returned to Miami and accepted employment with the Miami Copper Company as underground electrician and said nothing about his back ailment to them and passed their physical examination before going to work. Miami Copper Company had the same medical staff as the Inspiration Copper Company. Respondent stated that he told Doctor Harris "right off" after going back to work at Mi-

ami Copper of his ailment and told him the history of his case. He went to see Doctor Harris several times. He further stated that he had suffered no injury of any kind between January 5, 1951 and the date he began work at Miami Copper. He finally went to Doctor Harris around September 12, 1953, and told him "There has to be something done" and that he couldn't go any further and asked him if he couldn't recommend or send him to a doctor. He stated that Doctor Harris said he couldn't do anything. It was then that he went to Doctor Mark W. Wall at Mesa as above related.

It is clear from the testimony of respondent that the seriousness of his injury suffered on January 5, 1951, manifested itself almost immediately after its occurrence. His statement that his body was bent, his left hip was higher than the right hip, that he limped when he walked, that he could not wear a tool belt without great pain, that he never got any better from the date of the injury but always got worse, that he was compelled to lay off a couple of days at times and at other times he "was just on the job, that's all", that the pain was continuous when he was working at North American, that he could only sleep in one position and that he didn't work while in the East except just to get enough money on which to get back to Arizona and that he didn't work because of his back condition clearly evidences the seriousness of his injury and his knowledge of the serious-

ness of his condition and it clearly indicates a disability which prevented him, as he stated, from efficiently discharging the duties of his work in that those with whom he worked complained because he did not do his full share.

If respondent's statements are to be taken as true he was "entitled to compensation" under the conditions related by him in early September, 1952. We said in Hartford Accident, Etc., Co. v. Industrial Commission, supra [43 Ariz. 50, 29 P.2d 144], the law did not require an injured person to file an application for compensation until he was "entitled to compensation". Neither does it require him to file a petition therefor even though he is "entitled to compensation". His failure, however, to file an application for compensation after he is entitled thereto under the rule laid down in that case starts the statute of limitation to run. After August 28, 1952, when respondent left his job at the Inspiration Copper Company he did not work except just enough to get sufficient money on which to return to Arizona. This he said was because of his back condition.

We adhere to the rule laid down in the cases cited above that the theory of compensation is based upon financial loss resulting from an injury. At the same time we hold that when a person becomes definitely conscious of a serious injury arising out of and in the course of his employment to the extent that he is then and

there entitled to compensation, it is his duty to make that fact known to his employer and to the commission by filing an application for compensation within the statutory period, and that the statute begins to run when it becomes compensable whether he files a claim therefor or not.

In conclusion we hold that the commission acting in the exercise of judicial functions is limited in its jurisdiction to the allegations or statements in the petition which vests it with jurisdiction and that it may not assume jurisdiction upon some other or different grounds, as it did in the instant case. There is no evidence whatever to support its finding of new additional or previously undiscovered disability as the result of the accident of January 5, 1951, nor is there any authority in law for the allowance of accident benefits under the circumstances of this case for the reason that the respondent did not comply with the provisions of section 56–940(e), A.C.A. 1939, which provides the only method in which such medical benefits may be recovered from a self-insured employer.

Award set aside.

LA PRADE, C. J., and UDALL and WINDES, JJ., concur.

STRUCKMEYER, Justice (concurring in part, dissenting in part).

The matters which determine this appeal fall into four categories. They were so presented by counsel and will be so treated here. All the matters raised in the briefs will be discussed in order to understand the implications of the statements in the majority opinion.

Two types of "benefits" inure to an injured employee under the Workmen's Compensation Act of this state: (1) "Accident benefits", that is, medical, surgical, hospital care, etc. Section 56–938, A.C.A.1939. (2) "Compensation" benefits awarded "on the basis of average monthly wage at the time of injury". Section 56–952, A.C.A.1939.

If an employee is injured in an accident arising out of and in the course of his employment, he is immediately entitled to all the "accident benefits" described in 56–938, supra, and this is without any claim, petition or other affirmative action on his part, but to obtain "compensation" benefits he must not only suffer a compensable loss but make application therefor.

#### The Procedure.

On January 5, 1951, the respondent, Jerry B. Smith, while working for petitioner, the Inspiration Consolidated Copper Company, sustained an injury to his back. He was treated at petitioner's hospital on the same day and in due time thereafter petitioner notified respondent, the Industrial Commission of Arizona, of the injury. It should be observed that the Workmen's Compensation Act of Arizona does not require that an injured employee file a notice or report of injury with the Industrial Commission, but it does direct the filing by the employee of

an application in order to obtain "compensation" benefits. Section 56–967, A.C.A.1939. Smith did not file an application for such "compensation" benefits until September 29, 1953—over two years and nine months after the accident. His application was on a printed form entitled "Workman's Report of Injury and Application for Benefits"— "To be Sent to the Industrial Commission of Arizona". It complies with Section 56–967, supra, in every respect.

Thereafter by a letter dated October 3, 1953, the petitioner was informed by the Industrial Commission in part as follows:

"Please be advised that in checking this case, we find an accident reported in January of 1951, on the 'no time lost sheet', therefore, there is the possibility that the claimant's claim is timely."

The Workmen's Compensation Act does not make provision for such a report referred to as a "no time lost sheet". It does provide by Section 56–966, A.C.A.1939 that the employer notify the Commission of injuries. The customary practice is for the employer to send to the Commission a list of all employees who have suffered an injury during the course of the preceding month. This list is the "no time lost sheet" referred to in the letter of October 3, 1953. The Commission thereafter uniformly treated the "no time lost sheet" listing as conferring jurisdiction upon itself to hear and determine the right to "compensation" benefits. The initial application of September 29, 1953, was treated as a petition to reopen a claim under the authority of a different section of the Act.

The procedure adopted by the Commission is questioned by the petitioner for the reason, as pointed out in the majority opinion, that an injured employee must file his application for "compensation" benefits within one year from the day the accident occurred "or the right thereto accrued." The Commission insists that because it receives annually "many, many thousands" of these "no time lost sheet" listings, they should be treated through "administrative interpretation" as a claim upon which "compensation" benefits can be awarded. I cannot agree that "administrative interpretation" may supplant the specific provisions of a statute; nor that such be used to deny the petitioner a legal right, namely, the right to assert the staleness of respondent's claim. Therefore, I am in accord with the majority that the Commission cannot make a valid award of "compensation" benefits unless predicated on the statutory application for such benefits. However, I am not in accord with the statement of the majority that the Commission "had not been vested with any jurisdiction in this case prior to September 29, 1953 * * *", for the reason that an employee, by the provisions of Section 56–938, supra, and 56–940(e), infra, is immediately at the time of the injury entitled to "accident benefits", which, if they are not provided by an employer, may be provided by the Commission on "its own motion". It is my opinion that the juris-

diction of the Commission for the purpose of caring for an injured employee and providing the statutory "accident benefits" attaches immediately upon the happening of the accident.

## The Accident Benefits.

On the 5th of April, 1954, there was filed in this cause by the Commission a document entitled "Decision upon Rehearing and Amended Findings and Award", which among other things provided that respondent was entitled to "accident benefits".

Section 56–940(e) provides:

"In the event the medical, surgical, or hospital aid or treatment being furnished by an employer is such that there is reasonable ground to believe that the health, life or recovery of any employee is endangered or impaired thereby, the commission may, *upon application of the employee or upon its own motion, order a change of physicians or other conditions.* If the employer fails to promptly comply with such order the injured employee may elect to have medical, surgical or hospital aid or treatment provided by or through the commission. * * *" (Emphasis supplied.)

The respondent Smith from time to time received treatment at the petitioner's hospital. On September 12, 1953, not having improved, respondent sought independent medical advice and thereafter on the 21st day of September submitted to an operation by a private physician.

Petitioner complains that there was no attempt of any kind to comply with the above quoted statute. In this petitioner is correct. There was no application to the Commission for a change of physicians, no order by the Commission for such a change or setting forth "other conditions"; there is no order or evidence of any kind from which can be inferred that the private physicians treating respondent Smith were provided "by or through the commission".

I am in accord therefore with the majority that the award of medical benefits is unlawful and must be set aside.

## The Causation.

Evidence was taken in this cause involving 112 pages on behalf of respondent Smith and 72 pages on behalf of petitioner Inspiration Consolidated Copper Company. Practically the whole thereof was directed to the question of the cause of Smith's disability. This issue was made on a letter dated October 14, 1953, of Dr. I. E. Harris, Chief Surgeon for the Miami-Inspiration Hospital, addressed to the Commission which in part reads:

"* * * I can, personally, see no relation what so ever to the condition that is described by the operating physician and the alleged injury of January 5, 1951."

The respondent testified repeatedly that from the time of the accident his back continuously pained him. While testifying that this was of a continuous nature, he several times testified:

"* * * Like I said, it (the pain) would lighten up for a couple of weeks and then the next couple of weeks it would come right back again. It was just a come-and-go proposition."

Both of the respondent Smith's private physicians, Dr. John R. Green and Dr. Alvin L. Swenson, testified in essence that the accident of January 5, 1951, could cause the spinal injury of a ruptured disk as confirmed by the operation in September of 1953. Without detailing more of the evidence, it is sufficient to say that the Commission did find on a disputed question of fact that the disability was a result of the accident of January 5, 1951. I am in accord with the majority that the evidence justifies the conclusion that the injury in question resulted from the accident of January 5, 1951.

### The Timeliness of Application.

The petitioner has assigned as error the "accepting and acting" upon the application of September 29, 1953, by the Commission, for the reason that the application was not seasonably filed or the delay justified. This assignment is directed to the provision of paragraph three of the award which directs that "compensation" benefits be paid to the applicant for temporary disability. I disagree with the disposition of this portion of the case by the majority for the following reasons:

*First.* Since the Commission treated the "no time lost sheet" as a proper application upon which to base the award and did not base its award upon the statutory application as filed by Smith over two and a half years later, it was not necessary and the Commission in fact did not determine whether the statutory application was timely or seasonably filed or the delay justified. Accordingly there was no adjudication by the Commission of this fact either actual or implied, and therefore no determination which this court is able to decide was erroneous.

*Second.* A majority of this court, in deciding that the statute of limitations commenced to run against Smith "in early September", have usurped the function of the Industrial Commission in that they have assumed to exercise a right which is solely the prerogative of the Commission. By statute the authority of this court on appeal under the Workmen's Compensation Act is set forth as:

"* * * The review shall be limited to determining whether or not the commission acted without or in excess of its power; and, if findings of fact were made, whether or not such findings of fact support the award under review. * * *" Section 56–972, A.C.A.1939.

Since it has been decided that the "no time lost sheet" is not an application within the meaning of the statute and that an award cannot be predicated thereon, then it is decided that "the commission acted without or in excess of its power". This court is not authorized to proceed further

and determine facts for this is exclusively the province of the triers of facts. Ocean Accident & Guaranty Corporation v. Industrial Commission, 32 Ariz. 54, 255 P. 598; Cole v. Town of Miami, 52 Ariz. 488, 83 P.2d 997; Kennecott Copper Corp. v. Industrial Commission, 62 Ariz. 516, 158 P.2d 887; Martin v. Industrial Commission, 75 Ariz. 403, 257 P.2d 596.

*Third.* The rule in this jurisdiction is as quoted by the majority opinion from Hartford Accident, etc., Co. v. Industrial Commission, 43 Ariz 50, 29 P.2d 142, 144, that "the statute runs, not from the day of the accident, but from the date *the results of the injury became manifest* and compensable." (Emphasis supplied.) The record shows that Smith was never told that he might have suffered a herniated disk or that such might necessitate surgical relief. Petitioner's doctor, I. E. Harris, chief surgeon for the Miami-Inspiration Hospital, treated Smith from time to time. He testified that the last time he saw Smith was on the 6th of April, 1953, and:

"Q. State whether or not there was anything in your examination of him and his history as given by himself as to his symptoms that indicated to you the presence of any such neurological symptoms as might have suggested a ruptured intro-vertebrae (sic) disc? A. There was nothing in the history or the physical examination at that time that suggested a disc.

"Q. Did he suggest to you that there might have been a disc? A. No.

"Q. Or have any theory as to what might have been wrong with his spine? A. No."

Since Smith suffered an injury the extent of which he did not have actual knowledge and which he could not reasonably be charged with knowing (he cannot be charged with being better informed than the doctor, English v. Industrial Commission, 73 Ariz. 86, 237 P.2d 815, 818), I am of the opinion that the "result of the injury" was not manifest "in early September" 1952. Smith's ignorance continued until his examination by other doctors in September, 1953. The "results of the injury became manifest" at that time.

The majority seem to rest their opinion on the fact that the injury was manifest to Smith because he was continuously in pain. With this I am unable to agree for the following reasons. (1) Pain is the result of injury just as the ruptured intervertebral disk was the result of injury. The pain alone was manifest, not the ruptured intervertebral disk. (2) It is seldom that an injury is unaccompanied by pain. If pain is the test of the manifestation of an injury, then the "results of the injury" must be said to be manifest from the moment the injury occurs. "Manifest" means "made to appear". Webster's New International Dictionary, Second Edition, Unabridged. Obviously the results of an

injury are not made to appear by the pain. (3) Irrespective of how much pain an injured employee suffers, an award is not made on the basis of his complaints of pain. Pain is not a compensable disability while a ruptured intervertebral disk is.