MORGAN v WIN SCHULER'S RESTAURANT

1. WORKMEN'S COMPENSATION—APPEAL BOARD—FINDINGS OF FACT—
   PSYCHIATRIC CONDITION—SINGLE-EVENT INJURY—OCCUPATIONAL
   DISEASE.

   A finding of fact by the Workmen's Compensation Appeal Board
   that a totally disabling psychiatric condition was precipitated
   by an injury sustained during plaintiff's employment and that
   the injury was a single-event injury rather than an occupa-
   tional disease cannot be attacked on appeal where supported by
   competent evidence.

2. WORKMEN'S COMPENSATION—APPORTIONMENT—STATUTES—OCCUPA-
   TIONAL DISEASES—SINGLE-EVENT INJURY.

   Apportionment is disfavored in workmen's compensation law, and
   while the Workmen's Compensation Act allows apportionment
   of liability for occupational diseases, the act does not allow
   apportionment for an employee's disability arising from a
   single-event injury (MCLA 418.431).

3. CONSTITUTIONAL LAW—CLASSIFICATION—EQUAL PROTECTION—ARBI-
   TRARINESS—STATUTORY DISCRIMINATION—BURDEN OF PROOF.

   Constitutional guarantees of equal protection are interposed only
   against discriminations that are entirely arbitrary, and, when a
   classification is alleged to deny an individual equal protection
   of the law, such classification as a general rule must be shown
   to be unreasonable; the test of reasonableness is satisfied and
   the statutory discrimination will not be set aside if any set of
   facts reasonably may be conceived to justify it.

4. WORKMEN'S COMPENSATION—EARNINGS—DEFINITION—TIPS.

   Wages or earnings for workmen's compensation purposes include
   all items of compensation or advantage agreed upon in a
   contract of hiring which are measurable in money, whether in

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 58 Am Jur, Workmen's Compensation § 244 *et seq.*
[3] 15 Am Jur 2d, Civil Rights §§ 7, 10.
   16 Am Jur 2d, Constitutional Law § 490.
[4, 5] 58 Am Jur, Workmen's Compensation § 314.
[6] 58 Am Jur, Workmen's Compensation § 484 (supp).

the form of cash or as an economic gain to the employee; tips are measurable in money and are therefore included in the definition.

5. WORKMEN'S COMPENSATION—PURPOSE—TIPS—UNREPORTED TIPS—EVIDENCE.

The purpose of the Workmen's Compensation Act is to compensate an injured employee for his lost income; tips, whether lawfully reported or unreported on an employee's income tax return, still represent a part of the proportionate extent of the impairment of the injured employee's earning capacity and should not be excluded as wages where there is evidence to support them.

6. WORKMEN'S COMPENSATION—AWARDS—INTEREST RATE.

There is a split of authority as to whether the annual rate of interest on workmen's compensation awards is payable at five or six percent; therefore, interest on a workmen's compensation award shall be payable at five percent with an additional one percent held in abeyance, pending resolution of the issue by the Supreme Court or the Legislature.

Appeal from Workmen's Compensation Appeal Board. Submitted June 6, 1975, at Grand Rapids. (Docket No. 21610.) Decided August 28, 1975.

Claim by Bobbye Morgan against Win Schuler's Restaurant and Aetna Life and Casualty Insurance Company for workmen's compensation benefits. Benefits granted. Defendants appeal by leave granted. Modified and affirmed.

*Troff, Lilly, Piatt, File & Doyle* (by *Timothy A. Kragt*), for plaintiff.

*Cholette, Perkins & Buchanan* (by *Kenneth L. Block*), for defendants.

Before: McGREGOR, P. J., and D. E. HOLBROOK and N. J. KAUFMAN, JJ.

McGREGOR, P. J. On June 29, 1970, the plaintiff received third-degree burns to various parts of her

body as she was lighting floating brandy on top of coffee in her capacity as a waitress with Win Schuler's Restaurant. She was physically incapacitated, incurred various medical and hospital expenses, and was voluntarily paid compensation benefits by defendant Aetna Casualty & Surety Company for 44 weeks. At that time, payments were discontinued by Aetna, who contended that plaintiff was able to return to work. Plaintiff, however, claimed a disabling injury continuing beyond that period of time by petition filed in June, 1971. This petition subsequently was amended to include a claim of disabling neurosis alleged to be the result of these injuries. The hearing referee and the Workmen's Compensation Appeal Board both found that plaintiff was totally disabled on the basis of a psychiatric condition which was precipitated by the accident, and awarded compensation accordingly.

Their application for leave to appeal having been granted, the defendants now appeal this adverse decision of the appeal board and raise three issues for our consideration.

The first issue raised by defendants relates to the following finding made by the appeal board:

"On the basis of Dr. Payne's testimony and review of the facts, we find that plaintiff is totally disabled on the basis of a psychiatric condition precipitated by the accident. Chapter IV, § 431 provides no right to apportion disability in cases arising out of Chapter III injuries."

Defendants first contend that the plaintiff's disability should be characterized as an occupational disease rather than a single-event injury and that, therefore, apportionment should have been granted under Chapter IV, § 431 of the Workmen's

Compensation Act of 1969.[1] This contention is untenable. There is no doubt that plaintiff's difficulties arose from a single-event injury and not as a result of an occupational disease. See 1A Larson, Workmen's Compensation Law, § 37.20, *Adams v Acme White Lead and Color Works,* 182 Mich 157; 148 NW 485 (1914). Additionally, the clear implication of the appeal board's finding is that they considered plaintiff's disability as arising from a single-event injury. A finding of facts made by the appeal board is usually immune from review. *Babcock v General Motors Corp,* 340 Mich 58; 64 NW2d 917 (1954), *Skowronski v Ajax Forging and Casting Co,* 54 Mich App 136; 220 NW2d 725 (1974). We find that the appeal board's ruling that plaintiff's disability arose from a single-event injury is supported by competent evidence and, therefore, cannot be attacked.

Secondly, defendants argue that the apportionment provision of § 431 can be interpreted to cover Chapter III single-event injuries. We disagree.

First, the apportionment provision of Chapter IV is clear and there is no corresponding provision in Chapter III. The entire Workmen's Compensation

---

[1] MCLA 418.431; MSA 17.237(431) provides as follows:

"No compensation shall be payable for an occupational disease if the employee at the time of entering into the employment of the employer by whom the compensation would otherwise be payable, or thereafter, wilfully and falsely represents in writing that he has not previously suffered from the disease which is the cause of the disability or death. Where an occupational disease is aggravated by any other disease or infirmity, not itself compensable, or where disability or death from any other cause, not itself compensable is aggravated, prolonged, accelerated or in any way contributed to by an occupational disease, the compensation payable shall be a proportion only of the compensation that would be payable if the occupational disease were the sole cause of the disability or death as such occupational disease, as a causative factor, bearing to all the causes of such disability or death, such reduction in compensation to be effected by reducing the number of weekly payments or the amount of such payments, as under the circumstances of the particular case may be for the best interest of the claimant or claimants."

Act was rewritten in 1969 with the obvious intent to clarify the act. It is highly unlikely that the Legislature would provide for apportionment specifically limiting it to disabilities from "occupational diseases" and not provide a corresponding section in Chapter III if they so intended. As stated in *Skowronski, supra:*

"Having gone to such lengths to maintain this distinction throughout the new act, the Legislature was obviously aware of it when it approved an apportionment section that mentioned only disease-caused disabilities. The legislative failure to specifically include the other kinds of disabilities, which had been repeatedly distinguished from diseases, must be viewed a deliberate exclusion from the coverage of the apportionment section. *Therefore, it would be improper to consider plaintiff's injury covered by the apportionment section."* (Emphasis added.)

The second reason for not interpreting the statute to mandate apportionment of single-event injuries is that apportionment is disfavored in workmen's compensation law. See 1 Larson, Workmen's Compensation Law, § 12.20, and 2 Larson, Workmen's Compensation Law, § 59.20.

Having found that the Workmen's Compensation Act does not allow apportionment of an employee's disability arising from a single-event injury, we are squarely faced with defendants' third contention. The defendants argue that the act is unconstitutional as it allows apportionment in cases of occupational diseases but not in cases of single-event injuries, thus denying the defendants equal protection of the law.

The function of the equal protection clause under Federal and state constitutions is stated in *Fox v Employment Security Commission,* 379 Mich 579; 153 NW2d 644 (1967):

"There is no doubt that State legislatures have a broad range of discretion in establishing classifications in the exercise of their powers of regulation. However, the constitutional guarantees of equal protection are interposed against discriminations that are entirely arbitrary. In determining what is within legislative discretion and what is arbitrary, regard must be had for the particular subject of the State legislation. There must be a relation between the classification and the purposes of the act in which it is found."

Thus, when a classification is alleged to deny an individual equal protection of the law, such classification as a general rule must be shown to be unreasonable. The test of reasonableness is satisfied and the statutory discrimination will not be set aside if any set of facts reasonably may be conceived to justify it.

It would appear that a reasonable basis exists for the distinction allowing for apportionment in Chapter IV of the Workmen's Compensation Act dealing with occupational diseases and not allowing apportionment in Chapter III regarding single-event injuries, at least as far as employers are concerned.

A possible rationale for the distinction is that occupational diseases, by their nature, are caused by harmful conditions characteristic of particular industries while single-event injuries can occur in any occupation. Thus, the Legislature, in formulating the classification, may have felt that employers who engage in particular industries which have inherent harmful conditions need preferential workmen's compensation treatment. If these employers were not given this preferential treatment, conceivably they would not enter such industries since their workmen's compensation insurance would undoubtedly cost more. Therefore, the clas-

sification can be considered as an inducement for persons to engage in these industries with their characteristic harmful conditions. As the classification can reasonably be justified upon this state of facts, the defendants are not denied equal protection.

The second issue raised by the defendants relates to the following finding of the appeal board:

"In its second argument, defendant claims error in the use of plaintiff's unreported tips as one determinant utilized in arriving at plaintiff's average weekly wage. The thrust of the argument is that undeclared tips should not be permitted when failure to report all tips was in direct violation of defendant's written policy and the IRS rules. This Board has stated the following in reference to this issue:

" 'Inquiry as to whether Plaintiff has paid income tax on tips was proper at least to the extent that the question might bear on Plaintiff's credibility regarding income from tips. However, the referee erred in ruling in effect that if plaintiff had not paid tax on tips he could not expect to have tips treated as part of his earnings in the instant case. While we have no desire to condone any failure to report income or non-payment of proper income tax, nevertheless, such circumstances do not warrant the exclusion of proper evidence as to income in compensation cases. If Plaintiff would successfully establish earnings through tips, such income should be taken into consideration in fixing his average weekly wage whether or not reported as income and whether or not Federal income tax had been paid thereon. *(Smith v Theodore,* 1956 WCABO 236, 239.)'

"Since defendant firm was unable to produce any records which would warrant our reducing the plaintiff's estimated amount of tips and since its agent was unfamiliar with the base wages defendant paid during the periods of plaintiff's employment and the average amount of daily tips earned by its waitresses, we allow the Referee's estimate to stand, which estimate thereby also finds plaintiff's testimony to be credible."

The defendants first contend that tips should not be included at all in computing the average weekly wage. MCLA 418.371; MSA 17.237(371) states in part:

"(2) Average weekly wage means the weekly wage earned by the employee at the time of his injury, inclusive of overtime, premium pay, and cost of living adjustment, and exclusive of any fringe or other benefits which continue during disability, but in no case less than 40 times his hourly rate of wage or earning."

In *Hite v Evart Products Co,* 34 Mich App 247, 253; 191 NW2d 136 (1971), this Court interpreted "wage" as follows:

"Faced with the problem of construction of a similar statute, the enlightened court of another state determined that 'wage' or 'earnings' must be deemed to include all items of compensation or advantage agreed upon in a contract of hiring which are measurable in money, whether in the form of cash or as an economic gain to the employee. *Leslie v Reynold,* 179 Kan 422, 430 (295 P2d 1076, 1083). We approve this definition."

As tips are measurable in money, we hold that they fall within the *Hite* definition of "wage" or "earnings" as set forth above.

Furthermore, "wage" has also been defined in part as follows:

"In computing actual earnings as the beginning point of wage-basis calculations, there should be included not only wages and salary but anything of value received as consideration for the work, as, *for example, tips* * * * ." (Emphasis added.) 2 Larson, Workmen's Compensation Law, § 60.12.

As to defendants' second contention that unreported tips should not be utilized in arriving at plaintiff's average weekly wage, we believe the

holding in *Smith v Theodore, supra,* represents the better policy. Tips, whether reported or unreported, still represent a part of "the proportionate extent of the impairment of [the injured employee's] earning capacity in the employment in which [she] was working at the time of the injury," pursuant to MCLA 418.371(1); MSA 17.237(371)(1). As the purpose of the Workmen's Compensation Act is to compensate the employee for his lost income, unreported tips should not be excluded if the trier of facts determines that the reported tips do not accurately reflect the total tip income received by the employee.

In the instant case, there was evidence upon which the board could properly determine that plaintiff's total tip income exceeded her reported tip income. The findings of fact of the appeal board will not be set aside by this Court if there is any evidence to support those findings. *Hayes v Revere Copper & Brass, Inc,* 43 Mich App 685; 204 NW2d 695 (1972).

Defendants' third issue on appeal related to the appeal board's award of interest at the rate of 6 percent. This issue has split our Court. In *White v Extra Labor Power of America,* 54 Mich App 370; 221 NW2d 214 (1974), we found that 5 percent was the applicable interest rate. In *Morris v Baker Auto Parts,* 57 Mich App 65; 225 NW2d 179 (1974), and *Gibbs v Keebler Company,* 56 Mich App 690; 224 NW2d 698 (1974), we found 6 percent to be the proper sum. Our Supreme Court granted leave to appeal in *White,* 393 Mich 795 (1975), and will hopefully resolve that issue. In the meantime, our decision is to allow interest at 5 percent, the same to be awarded to read 6 percent in the event our Supreme Court permits that rate of interest in workmen's compensation cases.

Affirmed as modified herein. Costs to plaintiff, to be taxed jointly against both defendants.