542 P.2d 1154

**HARVEY AUTO SUPPLY INC. and Fidelity & Casualty Company of New York, Petitioners,**

v.

**The INDUSTRIAL COMMISSION of Arizona, Respondent,**

**George W. Harvey, Respondent Employee.**

**No. I CA–IC 1222.**

Court of Appeals of Arizona,
Division 1,
Department C.

Dec. 2, 1975.

Rehearing Denied Jan. 9, 1976.

Review Denied Feb. 3, 1976.

Jones, Teilborg, Sanders, Haga & Parks, P. C., by James A. Teilborg, Phoenix, for petitioners.

Greg L. Folger, Chief Counsel, The Industrial Commission of Arizona, Phoenix, for respondent.

Frost & Porter, by G. Terris Porter, S. Gibbons Frost, Show Low, for respondent employee.

## OPINION

WREN, Judge.

Fidelity and Casualty Company of New York, the insurance carrier for Harvey Auto Supply, Inc., petitioned for writ of certiorari to review a determination of average monthly wage made by the Industrial Commission. We have concluded that the average monthly wage was correctly computed and affirm the decision of the Commission.

George W. Harvey, the respondent employee, was injured during the course of his employment with Harvey Auto Supply on October 8, 1973. His claim for benefits was accepted by the carrier in its Notice of Claim Status of October 26, 1973, and average monthly wage set at $600. Thereafter on November 2, 1973, the Industrial Commission approved Harvey's claim and the average wage was found to be $600. Harvey filed a request for a hearing alleging an average monthly wage of $1,000. A second Notice of Claim Status was issued on January 14, 1974 releasing Harvey to temporary partial disability status and a hearing was again requested by Harvey raising the issue of average monthly wage. A hearing was held in Show Low, Arizona on May 21, 1974 directed solely to this question. On June 20, 1974 the hearing officer entered an award finding Harvey's average monthly wage to be $1,000.

The uncontroverted facts are as follows: Harvey Auto Supply, Inc. was a closely-held family corporation which had its first Board of Directors meeting on August 1, 1973. At that meeting, the Board resolved that Harvey would receive a monthly salary of $1,000 for his labor and services to the business. He was given the option of taking this salary in cash or in stock with a par value of $100 per share.

From the time his employment began on August 1, 1973 until his injury on October 8, Harvey received two salary checks totalling $861.30. According to Harvey, these checks represented his salary for one two week pay period in August and one in September. The sum represented a salary of $500 for each period minus withholding tax. Harvey testified that he had chosen to receive his salary for the other two pay periods in corporate stock. However, $1,000 in stock was not issued to Harvey until January 31, 1974 and his income tax return for 1973 reflected a salary totalling only $1,000 for the two months he worked at Harvey Auto Supply.

It is the carrier's position that the determination of average monthly wage can be based only upon the amount of wages actually *received* by an employee in the month prior to the injury. No contention is made that Harvey's allotted salary of $1,000 per month was unreasonable or that if he had in fact received $1,000 for those two months that he would not have legitimately earned it. The record adequately reflects Harvey's entitlement to the stipulated wage. The crucial fact, according to the carrier, is not the amount *earned* by an employee but the amount actually *paid.* Therefore, it urges, only Harvey's actual receipts prior to his injury can be considered in fixing his average monthly wage.

A.R.S. § 23–1041D provides: "The term 'monthly wage' means the average wage paid during and over the month in which the employee is killed or injured." The carrier insists that the term 'wages paid' must be given a literal interpretation so that unpaid wages of speculative value do not influence the determination of average monthly wage.

While it may be possible for a closely-held corporation to influence the determination of average monthly wage by issuing stock of a stated but questionable value to an employee-director, such is clearly not the case here. Harvey had an option established prior to his accident to take cash or stock and was free to exercise that option at any time. The fact that he could have received cash at his option dispelled any possibility of improper influence on average monthly wage.

■ The carrier also maintains that the receipt of the stock long after the actual earning of it precluded its consideration in the determination of average monthly wage. With this we cannot agree. The emphasis in determination of a workmen's compensation claimant's average monthly wage is the earning capacity of the claimant. The Industrial Commission may look beyond the amount actually paid to an employee in a given month if that amount does not represent the earning capacity of the claimant. *Floyd Hartshorn Plastering Co. v. Industrial Commission,* 16 Ariz.App. 498, 494 P.2d 398 (1972); *Moorehead v. Industrial Commission,* 17 Ariz.App. 96, 495 P.2d 866 (1972). Professor Larson points out the potentially absurd results if too much emphasis is placed on wages *paid* rather than *earned:*

> "Suppose, for example, that the employer, having agreed to pay a certain wage, then simply refuses to pay the claimant anything at all. Suppose at the time of hearing the claimant had in fact not been paid a single dollar for his work, although under his agreement with the employer he was entitled to receive $50. a week. Obviously no court would hold that the employee's 'average weekly wage' for that period was zero." 2 Larson's *Workmen's Compensation Law,* § 60.11, page 10–371. (1975).

■ Included in the computation of average monthly wage is anything constituting real economic gain to the claimant. *Moorehead v. Industrial Commission,* supra; 2 Larson's *Workmen's Compensation Law,* § 60.11 (1975). In *Moorehead,* the wages paid to the employee were found to represent more than the actual earning capacity and claimant's average monthly wage was reduced to reflect earning capacity rather than wages paid.

Since Harvey's earning capacity was established at $1,000 per month and Harvey was entitled to this amount, the fact that the stock was not paid in the month earned should not affect the average monthly wage determination.

The carrier points out that dicta in *Houston v. Industrial Commission,* 19 Ariz.App. 255, 506 P.2d 646 (1973), establishes that an average monthly wage based upon a stipulated wage agreement rather than actual earnings is erroneous. In Harvey's case, it was shown that Harvey actually earned the amount of the stipulated wage, and the consideration of the wage agreement under these circumstances was not erroneous.

■ We also are not persuaded by the fact that Harvey's 1973 Income Tax Return reflected an income of only $1,000 for two months of employment with Harvey Auto Supply. Workmen's compensation laws are not controlled by the Internal Revenue Code's standards for reporting income. *See, Hobbs v. Industrial Commission,* 23 Ariz.App. 422, 533 P.2d 1159 (1975); *Cudahy Packing Company v. Industrial Commission,* 7 Ariz.App. 335, 439 P.2d 307 (1968). Furthermore, the Internal Revenue Code provides individual taxpayers the option of reporting income on the basis of accruals or cash receipts and disbursements. *See* Title 26 U.S.C. Internal Revenue Code § 446(c).

■ Finally the carrier contends that the actual dollar value of the stock issued to Harvey was never proven. We do not feel this fact, even if true, is relevant. Even if the stock were worthless, Harvey's earning capacity would still be $1,000 per month, as it was his option to choose cash rather than the stock.

The award is affirmed.

NELSON, P. J., and SCHROEDER, J., concurring.