593 P.2d 919

**Sandra Elaine SCOTT, Petitioner,**

v.

**The INDUSTRIAL COMMISSION of Arizona, Respondent,**

**Arnett Cab Service/Checker Cab Co., Respondent Employer,**

**The Home Indemnity Company, Respondent Carrier.**

**No. 1 CA–IC 1870.**

Court of Appeals of Arizona, Division 1, Department C.

Dec. 1, 1978.

Jerome & Gibson, P. C. by Alan M. Schiffman, Phoenix, for petitioner.

John H. Budd, Jr., Chief Counsel, The Industrial Commission of Arizona, Phoenix, for respondent.

Glen D. Webster, Jr., John A. Flood, Phoenix, for respondents employer and carrier.

## OPINION

SCHROEDER, Judge.

In this review of an Industrial Commission award, we are called upon to reconsider the prior decisions of this Court holding that tips regularly and customarily received by an employee directly from customers are excluded from the computation of "average

monthly wage" for purposes of determining workmen's compensation. *Springer v. Industrial Comm'n,* 23 Ariz.App. 429, 533 P.2d 1166 (1975); *Industrial Comm'n v. Jordan,* 9 Ariz.App. 23, 448 P.2d 895 (1968).

This case arises from the claim of petitioner, Sandra Elaine Scott, who was employed as a taxicab driver for respondent-employer, Arnett Cab Service/Checker Cab Co. The petitioner suffered a compensable injury in the course of her employment. Her claim was accepted for benefits, and the sole question in these proceedings is whether her tips should have been included in setting her average monthly wage pursuant to A.R.S. § 23–1041.[1]

The stipulated facts are that the petitioner had been employed by respondent-employer for approximately six months prior to her injury on December 10, 1976. During that period of employment she received $2,461.35 directly from the employer based upon a commission of approximately 40% of the passenger fares. Although no contemporaneous records were kept of tips from passengers, it is stipulated that petitioner received approximately $800.00 in tips prior to the injury. At the time that petitioner was originally hired, both she and the employer contemplated that she would receive tips, and that such tips would belong solely to the petitioner. Tips were not included in the calculations on which the employer's workmen's compensation premiums were based. The Industrial Commission set petitioner's average wage at $411.22, based solely upon her earnings in the form of employer paid commissions and excluding the tips. That decision was in accordance with the cases of *Jordan* and *Springer.*

Upon thorough reconsideration of the legal question in the light of the policies of our statute and the overwhelming weight of authority elsewhere, we overrule *Jordan* and *Springer* and hold that tips such as

1. A.R.S. § 23–1041 provides in relevant part:
   A. Every employee of an employer within the provisions of this chapter who is injured by accident arising out of and in the course of employment, or his dependents in event of his death, shall receive the compensation fixed in this chapter on the basis of such employee's average monthly wage at the time of injury.
   D. The term 'monthly wage' means the average wage paid during and over the month in which the employee is killed or injured.

those received in this case should be included in determining average monthly wage. Our ruling, however, is not to apply retroactively to claims closed prior to this day.

In reaching this decision, we bring Arizona into harmony with the nearly unanimous conclusion reached by legislatures and courts in other jurisdictions which have expressly dealt with the problem. *See generally* Larson, The Law of Workmen's Compensation, § 60.12 at 10–375–316 (1976); *annot.* 75 A.L.R. 1223 (1931).

We begin by recognizing that in some service occupations, including that of taxi drivers, a substantial portion of the employee's compensation for services comes in the form of tips. This is illustrated by our federal income tax law which requires that tips be reported as part of income, Int.Rev. Code § 61, Treas. Reg. 1.61–2 (1954), and by federal minimum wage laws which permit employers to credit tips against a certain portion of their obligation to pay minimum wages. 29 U.S.C. § 203(m). In this case the parties recognized from the outset that a portion of this petitioner's compensation would come in the form of tips from customers.

It necessarily follows that when an employee is unable to work because of an industrial injury the loss of income from tips is as real as the loss of income from employer disbursements. The manifest injustice of compensating for the losses stemming from one source but not from the other has been a persuasive force in the development of the law. The arguments are well developed in Judge Nelson's dissent in *Springer.*

The inclusion of tips in the wage base for computing benefits is far from new or untested, and, in fact, dates from early in this century. The leading case came out of England. *Penn v. Spiers & Pond, Ltd.,* 1 K.B. 766, 14 Ann.Cas. 335 (1908). The English Court's reasoning had crossed the Atlantic by 1917 when the leading United States case of *Sloat v. Rochester Taxicab Co.,* 177 App.Div. 57, 163 N.Y.S. 904 (1917), was decided. The English Workmen's Compensation Act had based compensation upon "earnings." The New York statute, like our own, used the word "wages." Yet, the Court refused to hold the difference material:

> [i]t is common knowledge that porters on sleeping cars are employed at inadequate wages, and that the employer and the employée recognize that the great part of the service rendered by the employee is to be paid by the patrons of the company . . . *The tip is so usual and the amount so uniform that the employer and the employée realize about how much in addition to the tips it will be necessary for the employer to pay to the employée to give him reasonable compensation.* The whole theory of tipping, as at present understood in the usual practice, is a payment made in order to get reasonable service, and is an exaction made or permitted by the employer, so that his patrons shall help him pay the wages which is [sic] fairly due from him to his employée. *Sloat v. Rochester Taxicab Co.,* 177 App.Div. at 60, 163 N.Y.S. at 906 (1917) (emphasis added).

Many other jurisdictions followed suit, their courts holding by similar statutory interpretation that the workmen's compensation law should provide benefits based upon loss of tips as well as ordinary wages.[2]

---

2. *Hartford Accident & Indemnity Co. v. Industrial Comm'n,* 41 Cal.App. 543, 183 P. 234 (1919).
   *Sturgill v. M & M, Inc.,* 329 A.2d 360 (Del.Sup. 1974).
   *Employers Commercial Union Ins. Co. v. Bryant,* 130 Ga.App. 596, 203 S.E.2d 896 (1974).
   *Deason v. Travelers Ins. Co.,* 242 So.2d 906 (La.App.1971).
   *Gross' Case,* 132 Me. 59, 166 A. 55 (1933).
   *Power's Case,* 275 Mass. 515, 176 N.E. 621 (1931).
   *Morgan v. Win Schuler's Restaurant,* 64 Mich. App. 37, 234 N.W.2d 885 (1975).
   *Sloat v. Rochester Taxicab Co.,* 177 App.Div. 57, 163 N.Y.S. 904 (1917).
   *Larochelle v. Hickory House, Inc.,* 80 R.I. 334, 96 A.2d 830 (1953).
   *Bryson v. Benton,* 217 Tenn. 116, 395 S.W.2d 794 (1965).
   *Lloyds Casualty Co. v. Meredith,* 63 S.W.2d 1051 (Tex.Civ.App.1933).

The statutes construed in these jurisdictions are quite similar to A.R.S. § 23–1041(A) and (D). *E. g., Morgan v. Win Schuler's Restaurant,* 64 Mich.App. 37, 234 N.W.2d at 886 (1975) (weekly wage defined as "the average weekly wage earned by the employee at the time of [his] injury . . ."); *Larochelle v. Hickory House, Inc.,* 96 A.2d at 833 (average weekly wage defined as "the average weekly wage earned by the employee at the time of the injury . . ."). One court has gone so far as to hold that a statute which expressly excluded "gratuities" from computation of average wage nevertheless did not exclude the types of tips customarily received in service occupations such as taxi driving and waiting tables. *Sturgill v. M & M, Inc.,* 329 A.2d 360 (Del.Sup.1974).

Two jurisdictions with statutes expressly excluding tips and gratuities are New Mexico and Nebraska. N.M.Stat. § 59–10–12.-13(A); Neb.Rev.Stat. § 46–126. The vast majority of statutes which make express reference to tips and gratuities, however, make some provision for including them in wage computations.[3]

In the light of this experience, we are not persuaded by respondents' argument that inclusion of tips would wreak havoc upon the administration of a compensation system. *See Petrafeck v. Industrial Comm'n,* 554 P.2d 1097 (Colo.1976), which expressly rejected administrative expediency as a ground for exclusion of tips from average wage computations and held that there was no rational basis for exclusion. Nor are we persuaded that because tips have not been included in the basis for computations of premiums as between the employer and his carrier, tips must be excluded as a basis for compensation. Premium computation is not dispositive of such issues. *See Still v. Industrial Comm'n,* 27 Ariz.App. 142, 551 P.2d 591 (1976).

Our holding today is not only consistent with the workmen's compensation law of most other jurisdictions, it is also consistent with the humanitarian policy of our own workmen's compensation statute to compensate for financial loss due to industrial injuries. *Maness v. Industrial Comm'n,* 102 Ariz. 557, 434 P.2d 643 (1967); *Inspiration Consolidated Copper Co. v. Smith,* 78 Ariz. 355, 280 P.2d 273 (1955). This Court has stressed that in computing average monthly wage, there should be included those items constituting "real economic gain to the employee." *Moorehead v. Industrial Comm'n,* 17 Ariz.App. 96, 100, 495 P.2d 866, 870 (1972), *quoting with approval,* 2 Larson, *supra,* § 60.12; *Harvey Auto Supply, Inc. v. Industrial Comm'n,* 25 Ariz.App. 274, 542 P.2d 1154 (1975).[4] Tips are real economic gain to the employee.

The decision of this Court in *Jordan* and followed by a divided Court in *Springer* relied in essence upon two Arizona Supreme Court decisions, neither of which dealt directly with the problem of the inclusion of tips as wages for purposes of computing average monthly wage. *Beaman v. Westward Ho Hotel Co.,* 89 Ariz. 1, 357 P.2d 327, 83 A.L.R.2d 1018 (1960); *Barron v. Ambort,* 64 Ariz. 209, 167 P.2d 925 (1946). Those cases, each of which in fact decided the precise question before the Supreme Court in favor of the broader rather than the narrower proffered interpretation of "wages," do not compel the result in *Jordan.* For the reasons stated in Judge Nelson's able analysis of those cases in his

3. Alaska Stat. § 23.30.265(20).
   Ark.Stat.Ann. § 81.1302(h).
   Fla.Stat.Ann. § 440.02(12) (West).
   Idaho Code § 72–102(26).
   Ky.Rev.Stat. § 342.620(15).
   Md.Ann.Code art. 101, § 67(8).
   Minn.Stat.Ann. § 176.011(3) (West).
   Mo.Ann.Stat. § 287.250(7) (Vernon).
   N.H.Rev.Stat.Ann. § 281:2(VI).
   N.J.Stat.Ann. § 34:15–37 (West).
   Pa.Stat.Ann. Tit. 77, § 582(e) (Purdon).

4. A more narrow approach might appear to have been taken in *Still v. Industrial Comm'n, supra,* in which the Court cited the *Springer* case. That case, however, involved union negotiated fringe benefit contributions by the employer to the union's insurance funds. In *Still,* the Court noted that the contributions were not made to the employee, may never have resulted in actual benefits accruing to the employee and bore little economic relationship to the actual personal efforts of the employee. The same cannot be said of the tips involved here.

dissent in *Springer,* there is no real inconsistency between those cases and our holding that the kinds of tips with which we deal today are includable as wages for purposes of workmen's compensation.

While we do not lightly overrule prior decisions of this Court, we shirk our duty when we fail to reconsider serious questions which may have been erroneously decided. In our view, the results in *Jordan* and *Springer* fly in the face of statutory policy to fix compensation in relation to the economic loss sustained as a result of industrial injury.

The award is set aside.

NELSON, J., concurring.

WREN, Presiding Judge, dissenting:

I respectfully dissent. In my opinion *Industrial Comm'n v. Jordan* is correct in holding that the "definition of 'wages' in *Ambort* and of 'tips' in *Beaman* is analytically sound . . . ." and that "[tips] do not come within the purview of 'wages' within the meaning of the Workmen's Compensation Act." 9 Ariz.App. at 27, 448 P.2d at 899.

Credence to this position is lent by legislative silence to *Jordan* and the subsequent reenactment of § 23–1041 without change in 1972 Ariz.Sess.Laws, Ch. 146, § 38 and 1977 Ariz.Sess.Laws, Ch. 151, § 9. It is further to be noted that the majority decision leans heavily on "wage" interpretations from other states; but, as noted by then Chief Judge Haire in *Moorehead v. Industrial Comm'n,* 17 Ariz.App. 96, 495 P.2d 866 (1972), in speaking to the question of travel expenses and average monthly wage, cases from other jurisdictions are generally not too helpful because of variances in statutory provisions.

I would also note, parenthetically, a point called to my attention by *Dearing v. Arizona Department of Economic Security,* 121 Ariz. 203, 589 P.2d 446 (1978), that prior to 1947, the Employment Security Act defined "wages" as follows:

(n) 'Wages' means all remuneration for services from whatever source including commission and bonuses and the cash value of all remuneration in any medium other than cash. *Gratuities customarily received by an individual in the course of his work from persons other than his employing unit shall be treated as wages received from his employing unit. . . .* (Emphasis supplied.)

§ 56–1002(n), A.C.A.1939

All reference to "gratuities" was deleted by the 1947 amendment, and since then the Department of Economic Security has construed the term as excluding tips.

As to the case before us, since no definition of "wage" is given by statute or rule of the Industrial Commission, a Websterian approach is clearly apropos. "Wage" is defined in Webster's Third International Dictionary 2568 (1969) as:

a pledge or payment of [usually] monetary remuneration *by an employer* especially for labor or services [usually] according to contract and on an hourly, daily, or piecework basis and often including bonuses, commission and amounts paid *by the employer* for insurance, pension, hospitalization and other benefits. (Emphasis added.)

In the abstract and as a matter of principle, I would agree that tips should well be considered wages under Workmen's Compensation Law in many occupations where they constitute a major or even a substantial portion of the recipient's income for services, but I do not agree that this Court is the proper forum to accomplish that result. To my mind this decision amounts to judicial legislation in an area of major importance under the framework of Workmen's Compensation Law, a matter better reserved for the resources and capabilities of the Arizona Legislature, after full consideration of actuarial principles of insurance in the collection of premiums and payment of compensation benefits.

I would affirm the award.