495 P.2d 866

Mack M. MOOREHEAD, Petitioner,

v.

The INDUSTRIAL COMMISSION of Arizona, Respondent,

Ralph M. Parsons Company, Respondent Employer,
The Travelers Insurance Company, Respondent Carrier.

No. 1 CA–IC 611.

Court of Appeals of Arizona,
Division 1,
Department B.

April 19, 1972.

Rehearing Denied May 11, 1972.
Review Denied June 27, 1972.

Davis & Eppstein by Robert W. Eppstein, Tucson, for petitioner.

William C. Wahl, Jr., Chief Counsel, Phoenix, for respondent The Industrial Commission of Arizona.

Spaid, Fish, Briney & Duffield by Michael C. Young, Tucson, for respondent employer and respondent carrier.

HAIRE, Chief Judge, Division 1.

In this review by certiorari of an Industrial Commission award affirming the hearing officer's decision in a workmen's compensation proceeding, we are asked to determine whether the hearing officer committed error in establishing the petitioner's average monthly wage when he refused to consider amounts paid to the petitioner by his employer for travel expenses.

No question is raised on review by either party concerning the amounts actually used by the hearing officer in establishing petitioner's average monthly wage at $924.51 per month. The sole question raised is whether an additional amount representing a travel allowance and averaging over $100 per month admittedly paid to the petitioning employee by his employer, should have been considered so as to increase the average monthly wage to the statutory monthly maximum of $1,000.

Petitioner is a member of Operating Engineers Local Union No. 428 and was working out of Tucson[1] at the time of his injury. The pertinent union contract provisions read as follows:

"ARTICLE XIV

"Expense Allowance

"As an approximately reasonable reimbursement for expenses incurred, a monetary allowance shall be paid for each day worked under the following conditions . . . :

"A. Basing Points: There shall be three types of basing points:

'A' Cities

'B' Cities

Workman's Residence

"Mileage distances under this Article shall be calculated from the middle of the construction job site to the City Hall of 'A' or 'B' cities or to the workman's residence, at the contractor's option.

\* \* \* \* \* \*

"The following zones shall apply to 'A' Cities:

| Zone 1 | 0–30 miles radius from City Hall |
|--------|----------------------------------|
| Zone 2 | 30–45 miles radius from City Hall |
| Zone 3 | 45–60 miles radius from City Hall |
| Zone 4 | over 60 miles radius from City Hall |

\* \* \* \* \* \*

"E. Zone Allowances: Zone allowances per day worked shall be as follows:

\* \* \* \* \* \*

| Zone 1 | $ .00 |
|--------|-------|
| Zone 2 | 4.00 |
| Zone 3 | 6.00 |
| Zone 4 | 8.00" |

---

1. Tucson was an "A" city under the union contract designation.

Essentially, the foregoing contractual arrangement provides for the payment of a travel expense allowance with a different scale for each zone—the farther away the zone, the larger the travel expense allowed. The jobsite involved was located more than 30 miles from the Tucson City Hall, and during the total pay period used by the hearing officer for determination of the petitioner's average monthly wage, the petitioner received the sum of $1,304.74 for travel expenses under the above-quoted provisions. No deductions of any kind were withheld from this amount by the employer, nor did the employer pay contributions to the union health and welfare plan or workmen's compensation premiums based upon said sum. Further, although petitioner reported the amount of this travel expense allowance as a gross income item in his income tax returns for the pertinent years, travel expenses in excess of this "zone pay" were deducted by him from his gross income to arrive at his adjusted gross income.

In arriving at his decision to omit the travel expense allowance in determining petitioner's average monthly wage, the hearing officer reasoned as follows:

"5. That in establishing a fair and equitable average of wage, it appears that the ultimate objective is to ascertain the real economic gain, if any, to the applicant (see, for example, Larson's Workmen's Compensation Law, Vol. II, Section 60.12, wherein it is stated, '. . . there should be included not only wages and salary but any thing of value received as consideration for the *work* . . . *constituting real economic gain to the employee.'* (Emphasis supplied). (See also Matlock v. Industrial Commission of Arizona, supra; Weingarten v. Democrat & Chronicle, 19 A.D.2d 566, 239 N.Y.S.2d 980 (1963); that an examination of the Union Agreement under which the travel expenses are paid (Article XIV, paragraph B & D) it was established that the applicant, residing in Tuc-

son and traveling to Zone 2 must travel from 60 to 90 miles on a round trip basis for which he receives the sum of $4.00 per day, or approximately four and one-half to six and one-half cents per mile, which realistically approximates actual out-of-pocket cost for motor vehicle operation (it being noted that applicant for tax purposes has realistically deducted ten cents per mile for this operation) and it certainly is reasonably doubtful that public transportation could be obtained at a lesser cost even assuming the unlikely possibility that such transportation were available to the remote areas in which applicant is required to travel; that it is again reasonably inferable that the travel expenses paid by the employer are for reimbursement or partial reimbursement only of travel expenses necessitated by travel to remote areas and said payments do not constitute value for the work performed (see, also, the somewhat analogous case of Pettis v. Industrial Commission of Arizona (supra), denying inclusion of saw rental in wage determination)."

We agree with the hearing officer's analysis of the problem involved. A.R.S. § 23–1041, subsec. A provides for the compensation of an injured workman "on the basis of such employee's average monthly wage at the time of injury". Although in many states the workmen's compensation statutes have express provisions defining what is included in the term "wages", the Arizona statutes are basically silent in this regard.[2] Prior Arizona decisions provide some guidelines although they do not reach the exact question involved here. In Matlock v. Industrial Commission, 70 Ariz. 25, 215 P.2d 612 (1950), the court held that in establishing the average monthly wage of an injured ranchhand, the Commission must consider the true value of a house, utilities, milk, butter, eggs and meat furnished by the employer to the employee as part of the compensation for his services. On the ap-

2. A.R.S. § 23–1041, subsec. C does exclude certain types of bonuses where compensation is based on "guaranteed wage" contracts.

peal in Pettis v. Industrial Commission, 91 Ariz. 298, 372 P.2d 72 (1962), the petitioning workman contended that the Commission should not have deducted "saw rental" before computing his average monthly wage. Although it is not absolutely clear from the facts stated in the Pettis opinion, it appears that the sums paid to the employee for "saw rental" were segregated from other compensation paid to him. Without much in the way of discussion, the Arizona Supreme Court rejected petitioner's contention, stating:

"The Commission properly deducted the saw rental in computing petitioner's average monthly wage since compensation is *based upon the wage* under the contract of hire." 91 Ariz. at 303, 372 P.2d at 76. (Emphasis added).

 From the Pettis opinion it is clear that in Arizona not every payment made to the employee by the employer constitutes "wages" for purposes of computing the injured employee's average monthly wage. There the payment to the employee for the use of his saw was held not to be a part of his "wage under the contract of hire." On the other hand, from the Matlock opinion it is clearly evident that payments or benefits conferred upon an employee in return for his labor and services are includable in computing the average monthly wage, even though these payments or benefits do not on their face purport to be "wages". Although the benefits provided in Matlock were not in the form of money, it is our opinion that the Arizona Supreme Court would have reached the same result had the payments been in the form of a money reimbursement to Matlock for sums expended by him for such purposes. From the foregoing, it might be argued that the transportation allowance in this case should be considered the same as the extra benefits provided to the employee in Matlock, and thus should constitute a part of his "wages" for average monthly wage computation purposes. We do not think so. An important distinction must be recognized to exist between the "room and board"

benefits provided in Matlock and the travel expense allowance provided in this case. In Matlock the extra benefits provided by the employer had the effect of helping Matlock meet his ordinary day-to-day requirements for food and lodging—requirements which would continue substantially unchanged whether Matlock was employed or not. On the other hand, the extra benefits here provided by the employer are directly related to meeting special transportation expenses entailed by reason of petitioner's employment—expenses which will cease with the cessation of petitioner's employment. While an unemployed worker must have a roof over his head, and continue eating regardless of whether employed or unemployed, he would no longer be required to expend money for travel to the jobsite if he were no longer employed. We think the principle to be derived from the foregoing is that "wages" do not include amounts paid to the employee to reimburse him for employment-related expenditures of a nature which would not be incurred but for his employment. Such payments are simply not intended as compensation for services rendered. Before any part of such allowances or reimbursements can be considered as a part of the employee's "wages" there should be some showing that the payments are more than sufficient to reimburse the employee for the work-related expense so that in effect the excess can be considered as extra compensation to the workman for his services performed.

Cases from other jurisdictions are generally not too helpful in considering this question because of the variances in statutory provisions. As stated in 58 Am.Jur. Workmen's Compensation § 310 at 796:

"There is also a lack of harmony on the question whether expense money allowed to an employee is to be included as a part of his earnings in computing the amount of compensation to be paid on account of his injury or death, due in part at least to differences in the terms of the statutes involved. According to some authorities, the question depends on

whether the allowance of expense money represents a *reasonably definite pecuniary gain* to the employee, and in some cases the amount of particular expenses has been held a part of the employee's earnings. *As a general rule, however, amounts paid an employee as reimbursements for expenditures which he is called upon to make in the course of his employment, in activities which he has no occasion to pursue when not employed, are not part of his earnings for the purpose of fixing workmen's compensation.*" (Emphasis added).

Larson expresses a similar viewpoint when he states that:

". . . there should be included not only wages and salary but anything of value received as consideration for the work, . . . *constituting real economic gain to the employee.*" 2 Larson's Workmen's Compensation Law, § 60.12 (1969). (Emphasis added).

*See also* Thibeault v. General Outdoor Advertising Co., 114 Conn. 410, 158 A. 912 (1932); Weingarten v. Democrat & Chronicle, 19 A.D.2d 566, 239 N.Y.S.2d 980 (1963); Turner v. Beatrice Foods Co., 165 Neb. 338, 85 N.W.2d 721 (1957); Le Voff v. Gompers & Blau, 278 App.Div. 878, 104 N.Y.S.2d 326 (1951); and Federal Underwriters Exchange v. Tubbe, 143 Tex. 216, 183 S.W.2d 444 (1944). *Contra*, see Postal Telegraph Cable Co. v. Industrial Accident Commission, Cal.App., 32 P.2d 1067, revd. on other grounds, 1 Cal.2d 730, 37 P.2d 441 (1934).

In the case at hand the parties have contracted that the travel allowance paid to petitioner constitutes ". . . an approximately reasonable reimbursement" for the expenses involved. We think they are bound by that contract. See Ebasco Services v. Bajbek, 79 Ariz. 89, 284 P.2d 459 (1955). In any event, the evidence shows that here there was no residual financial gain to petitioner. Under these circumstances we hold that the zone transporta-

tion allowances did not constitute "wages", and that the hearing officer did not commit error in refusing to include such allowances in computing the employee's average monthly wage.

The award is affirmed.

EUBANK and JACOBSON, JJ., concur.