776 P.2d 356

**PINETOP TRUCK & EQUIPMENT SUPPLY, Petitioner Employer,**

**State Compensation Fund, Petitioner Carrier,**

v.

**The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**Monte S. McDonald, Respondent Employee.**

**No. 1 CA–IC 88–140.**

Court of Appeals of Arizona, Division 1, Department D.

June 27, 1989.

Christopher E. Kamper, Chief Counsel State Compensation Fund by John R. Greer, Phoenix, for petitioner employer and carrier.

Catherine A. Fuller, Chief Counsel, the Indus. Com'n of Arizona, Phoenix, for respondent.

Frost & Porter, P.C. by G. Terris Porter, Show Low, for respondent employee.

## OPINION

KLEINSCHMIDT, Judge.

This is a special action review of an Industrial Commission award establishing the claimant's average monthly wage. The basic issue is whether a portion of the money paid to the claimant, a logger, was expense reimbursement and should therefore be excluded in the calculation of his average monthly wage. We find that the evidence supports the administrative law judge's finding that the so-called expense reimbursement was really a part of the claimant's wage, and must, therefore, be included in the calculation of benefits due the claimant.

In 1987, the claimant sustained an industrial back injury while employed by the petitioner employer, Pinetop Truck & Equipment Supply. His claim was accepted for benefits by the petitioner carrier, The State Compensation Fund. The Industrial Commission issued a notice of average monthly wage, setting the claimant's wage at $704.23 per month. A hearing was held at the claimant's request. The administrative law judge found that the average monthly wage equaled or exceeded the statutory maximum of $1,325, and this was affirmed on administrative review. This special action followed.

The claimant testified that he was hired in mid-April 1987 by Lonnie Covington of Pinetop. He testified that he, his wife, and Covington were present when he was told that he would be paid a certain number of cents per inch of tree diameter that he cut (stump inches), and he would be entitled to an additional ten percent of that amount if he performed top quality work (quality pay). The claimant testified that there was no written employment contract nor any other discussion about how he would be paid. Based on that conversation he went to work for Pinetop.

The claimant first became aware that Pinetop was designating a portion of his wages as "saw rental" when he received his first paycheck. Approximately forty to forty-five percent of his wages were paid on a separate green check, which he understood to be an expense reimbursement for his chain saw, tools, and other supplies. The claimant testified that he asked his employer about this practice and was told it was the only way Pinetop could pay such good wages. He stated that he did not question this practice any further because he needed the job and felt that he did not have any bargaining position with Pinetop. The claimant testified that when he added his brown wage check together with his green saw rental check, he was paid for exactly the number of stump inches he had cut plus an additional ten percent quality pay, without anything extra. The claimant consistently performed top quality work and received the additional ten percent quality pay.

The claimant's wife testified that she was present during her husband's conver-

sation with Covington, and she confirmed her husband's testimony. She stated that her husband brought her his daily stump inch figures, and she completed his daily timber faller's reports and calculated how much money he was entitled to receive from Pinetop. She also picked up her husband's paychecks and compared them against her records to be certain that he was being paid the correct amount. She agreed that the two checks together always represented the number of stump inches actually cut plus the quality pay, without anything extra. She testified that Pinetop's bookkeeper told her that the brown wage check included the quality pay. She also stated her husband earned between $1,500 and $1,600 per month at Pinetop.

Steven M. Massey, Pinetop's accountant and business manager, testified regarding the company's wage policy. He said that the company adds together the total amount owed for stump inches cut and quality pay and then divides it: sixty percent paid as regular wages on the brown check and forty percent paid as a travel expense reimbursement on the green check. He added that Pinetop also calculates twenty percent of the regular wages and pays that as saw rental in addition to the regular wages and travel expense reimbursement. According to Massey, the additional twenty percent for saw rental is added to the regular wages on the brown check.

On redirect examination, the claimant testified that he had never heard of a travel expense reimbursement until Massey testified. He also repeated that there was nothing extra included in his checks; he was paid for exactly the number of stump inches he cut plus quality pay.

In setting the average monthly wage at the statutory maximum of $1,325 per month, the administrative law judge found in relevant part, as follows:

> After careful deliberation and review of the Commission's claims file, and after observing applicant's demeanor while testifying under oath he is found to be a credible witness. Any and all conflicts in the evidence are resolved in favor of the applicant. The defendants' position that the monies paid the applicant by *green* check were travel reimbursement and not includable in applicant's gross wages is not supported by the evidence and is hereby rejected.
>
> 4. The testimony of the applicant, applicant's wife and the check stubs for the period from approximately August 7, 1987, thru November 14, 1987, establish that applicant's average monthly wage should be established at the statutory maximum of $1,325.00.

The Fund first argues that the award is inadequate because the administrative law judge failed to make a specific finding regarding saw rental. The argument continues that without such a finding it is impossible to ascertain the basis for the award. We will set aside an award when we cannot determine the factual basis for the administrative law judge's conclusion or whether it was legally sound. *See Post v. Industrial Comm'n*, 160 Ariz. 4, 7, 770 P.2d 308, 311 (1989).

In this case, the administrative law judge made adequate findings. The claimant testified that when he added together the two checks, the total equaled the number of stump inches he had cut plus quality pay. He stated that there was nothing extra included in his check over and above these amounts. The administrative law judge adopted the claimant's testimony and found him credible. He also explicitly rejected the Fund's argument that the amount paid on the green check was a travel reimbursement. By adopting the claimant's testimony that he did not receive any additional amounts over and above his actual wages, the administrative law judge, at the very least, implicitly rejected the Fund's argument that the claimant received any additional amount as saw rental. *See Pearce Dev. v. Industrial Comm'n*, 147 Ariz. 582, 583, 712 P.2d 429, 430 (1985) (holding that the court would not set aside an award where the administrative law judge's findings were implicit). No further finding was necessary.

The Fund next argues that the claimant acquiesced in the modification of his employment contract to include a provision for saw rental because he continued to perform under the contract once he became aware that that was how Pinetop was treating a part of his pay. The Fund argues that once this acquiescence to the modification made saw rental a part of the claimant's employment contract, it became binding on the Industrial Commission for purposes of computing the average monthly wage.

We observe first that while the claimant acquiesced in something, it was not in anything that his employer described. The administrative law judge rejected the employer's testimony about travel expenses and, as we have noted, implicitly rejected the notion that payments for saw rental were in excess of amounts owed as wages. It is, however, true that the claimant believed that the green reimbursement check was denoted saw rental merely to allow Pinetop to evade payment of workers' compensation, social security, and unemployment tax on forty to forty-five percent of his actual wages. It is also true that the claimant went along with this arrangement. This is the acquiescence which the Fund says precludes an award of the maximum average monthly wage.

Reimbursements for saw rental, *when clearly contracted for*, have been excluded from the calculation of the average monthly wage. *See Pettis v. Industrial Comm'n*, 91 Ariz. 298, 372 P.2d 72 (1962). The same is true of travel expenses. *Moorehead v. Industrial Comm'n*, 17 Ariz.App. 96, 99, 495 P.2d 866, 869 (1972); *Young v. Industrial Comm'n*, 17 Ariz. App. 100, 101, 495 P.2d 870, 871 (1972). This does not mean that the award should be set aside.

The testimony and circumstances suggest that Pinetop's method of compensation was devised to do just what the claimant surmised—evade, or at least impermissibly minimize, the employer's statutory responsibility to procure benefits for its workers. The administrative law judge apparently had the same feel for the matter.

Here, there was no *clear* contract provision, at least not at the outset, for saw rental. But even if the modification acquiesced in by the claimant was clear, expenses are not to be excluded from a calculation of the average monthly wage unless they bear a reasonable relationship to the actual work-related expense incurred. *See Moorehead*, 17 Ariz.App. at 99–100, 495 P.2d at 869–70. There was no suggestion that such was the case here. While a reasonable payment for saw rental, duly contracted for, might legitimately be excluded from wages, calling forty-five percent of a worker's pay saw rental does not make it saw rental.

The award is affirmed.

GRANT, C.J., and FIDEL, J., concur.