NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

WESTAT, *Petitioner Employer*,

LIBERTY MUTUAL INSURANCE, *Petitioner Carrier*,

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA, *Respondent*,

ELLISE FREE, *Respondent Employee*.

No. 1 CA-IC 17-0037
FILED 5-1-2018

Special Action - Industrial Commission
ICA Claim No. 20162-370187
Carrier Claim No. WC197-A96921
Robert F. Retzer, Administrative Law Judge

**AWARD SET ASIDE**

COUNSEL

Lundmark, Barberich, LaMont & Slavin, P.C., Phoenix
By Lisa M. LaMont
*Counsel for Petitioner Employer and Petitioner Carrier*

Industrial Commission of Arizona, Phoenix
By Jason M. Porter
*Counsel for Respondent*

Snow, Carpio & Weekley, PLC, Phoenix
By Charles M. Wilmer, Jr.
*Counsel for Respondent Employee*

---

**MEMORANDUM DECISION**

Judge Maria Elena Cruz delivered the decision of the Court, in which Presiding Judge Michael J. Brown and Judge David D. Weinzweig joined.

---

**C R U Z**, Judge:

**¶1**      This is a special action review of an Industrial Commission of Arizona ("ICA") award and decision upon review setting an average monthly wage. Petitioners argues the administrative law judge ("ALJ") erroneously found: respondent employee's—the claimant—compensable wages included per diem payments and lodging and transportation expenses under Arizona Revised Statutes ("A.R.S.") section 23-1041; the claimant received an economic gain from per diem payments because they exceeded her travel expenses; and the claimant was entitled to all lodging expenses.

**¶2**      We find the average monthly wage calculation is not supported by the evidence of record and is inconsistent with the applicable case law. We thus set aside the award.

**FACTUAL AND PROCEDURAL HISTORY**

**¶3**      The claimant had worked for Westat for several years when she was approached about taking a new position as a field interviewer. She initially declined the job because she had been earning $17-$18 per hour and the field interviewer position only paid $14.50 per hour. The recruiter then explained,

> the reason they kept it at that rate was because . . . [she would] get quite a few other benefits, including lodging at a Marriott Residence Inn the entire year except for the two two-week periods we were gone,[1] and transportation, which is our

---

[1]      The position required the field interviewer to be on the road eleven months of the year with two breaks at July 4th and Christmas.

> rental car or a company car, and per diems that we did get
> paid every week.

The claimant testified it was these additional benefits that financially allowed her to accept the position. She stated that she put all her belongings and her vehicle in storage, which gave her the added benefit of not having to pay for a home in Phoenix.

¶4     The claimant testified that she turned in weekly expense sheets, which included her per diem payments and her mileage reimbursement. Her per diem payment was between $51 and $74 per day, depending on the area of the country in which she was working. She stated that it was intended to cover all of her food on the road. The mileage reimbursement helped her pay for gas, tolls, parking, and any other expenses associated with use of the rental car, that she occasionally paid for out of pocket. The cost of the car itself, however, was accounted for by Westat.

¶5     The claimant testified that she injured her left shoulder while working in Massachusetts and lifting heavy case files out of her rental car. She filed a workers' compensation claim, which was accepted for benefits. The ICA then entered its Notice of Average Monthly Wage,[2] and the claimant timely protested.

¶6     An ICA ALJ heard testimony from the claimant in a hearing. The parties filed simultaneous post-hearing legal memoranda, and the ALJ entered an award setting the average monthly wage at the statutory maximum.[3]     Westat requested administrative review, but the ALJ summarily affirmed the award. Westat next brought this appeal. We have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(2), 23-951(A), and Arizona Rule of Procedure for Special Actions 10.

---

[2]     The ICA determines and issues the notice of average monthly wage. *See* A.R.S. § 23-1061(F). Prior to issuing the notice of average monthly wage, the ICA receives a recommended average monthly wage calculation from the insurance carrier. The ICA then independently determines the average monthly wage and issues the notice. *See, e.g., Borquez v. Indus. Comm'n*, 171 Ariz. 396, 398 (App. 1991).

[3]     The statutory maximum average monthly wage is set according to a schedule contained in A.R.S. § 23-1041(E).

**DISCUSSION**

¶7        In reviewing findings and awards of the ICA, we defer to the ALJ's factual findings, but review questions of law *de novo*. *Young v. Indus. Comm'n*, 204 Ariz. 267, 270, ¶ 14 (App. 2003). We consider the evidence in a light most favorable to upholding the ALJ's award. *Lovitch v. Indus. Comm'n*, 202 Ariz. 102, 105, ¶ 16 (App. 2002).

¶8        On appeal, Westat argues that the ALJ erroneously categorized various employment benefits received by the claimant as wages. The claimant testified that her job description and her wages and benefits were accurately described in the Household Interview BrassRing Screener Form, which was placed in evidence:

> The minimum starting pay rate for this position is $13.00 per hour. You are paid based on a 40-hour workweek. This is a nonexempt position and is eligible for overtime pay.
>
> *        *        *        *
>
> Benefits include:
>         • Paid lodging,[4] per diem from $51-$74 per day, paid holidays, bonuses, and individual housing/car while working in the field.
>
>         • Potential vacation time is dependent on the number of hours worked during the year.

¶9        Both parties filed the claimant's payroll information in evidence. This included pay stubs for two different types of checks that the claimant received: payroll checks for wages and overtime, and expense reimbursement checks for per diem and mileage. The payroll checks were for $14.50 per hour times 40 hours per week, for a gross weekly wage of $580. Deductions for Social Security and Medicare were taken from the payroll checks. Expense reimbursement checks reflect no deductions and are for the invoiced amount.

---

[4]        Westat had a contract with Marriott to house its employees. The claimant testified that she was housed in Residence Inns by Marriott. After her injury in Massachusetts, she asked at the front desk and was told that self-pay for her room was $154 per night.

¶10          Based on this information, the ALJ found:

> The applicant was paid $2,315.57 by check each month, her lodging averaged $4,670.97 per month [roughly $154 x 30 days], which was clearly an economic gain to the applicant as she did not have to maintain a residence in Phoenix and she did not retain a residence in Phoenix while working for the defendant employer. This would take the applicant's average monthly wage over the maximum of $4,428.91. Therefore, it is unnecessary to decide if the applicant's car/transportation should be included in her average monthly wage.
>
> Lodging and per diem is clearly includable in her average monthly wage. See *Matlock v. Industrial Commission* . . . and *Kerr v. Industrial Commission* . . . which says per diem is included in the average monthly wage regardless of actual travel and which employee could use for any purpose.
>
> If we take the base rate of $2,315.57 and add the per diem of $1,941.18 [rough average of $51+$74 x 30] we get $4,256.75. Therefore, even if the applicant's lodging costs are excessive, she would still be way beyond the stationary [sic] maximum of $4,428.91.

¶11          The claimant has the burden of proving all elements of the average monthly wage. *Zapien v. Indus. Comm'n*, 12 Ariz. App. 334, 336 (1970). The emphasis in setting an average monthly wage is on what the employee actually earned for her labor. *Harvey Auto Supply Inc. v. Indus. Comm'n*, 25 Ariz. App. 274, 276 (1975).

¶12          Wages can include a salary plus other payments or benefits, such as housing and food. *Matlock v. Indus. Comm'n*, 70 Ariz. 25, 28 (1950) *overruled on other grounds*; *accord* 8 Arthur Larson and Lex K. Larson, *Larson's Workers' Compensation Law* § 93.01[2][a], at 93-18 to -19 (2017). These extra payments or benefits, which on their face do not purport to be "wages," are includable in computing the average monthly wage because they are conferred upon an employee in return for his labor and services. *Moorehead v. Indus. Comm'n*, 17 Ariz. App. 96, 99 (1972) (discussing *Matlock*).

¶13          In contrast, wages do not include reimbursement for actual employment-related expenses incurred by the claimant. *Pettis v. Indus. Comm'n*, 91 Ariz. 298, 303 (1962). "[W]ages do [sic] not include amounts paid to the employee to reimburse [her] for employment-related

expenditures of a nature which would not be incurred but for [her] employment [as such] payments are simply not intended as compensation for services rendered." *Moorehead*, 17 Ariz. App. at 99.

¶14    However, simply because a payment is characterized as an expense does not preclude it from being considered a wage, but "there [must first] be some showing that the payments are more than sufficient to reimburse the employee for the work-related expense so that in effect the excess can be considered as extra compensation to the workman for [her] services performed." *Id.*; *Arizona Workers' Compensation Handbook* § 7.3.2.1, at 7-14 (Ray J. Davis, et al., eds., 1992 and Supp. 2017).

¶15    In this case, the claimant was a field interviewer and her job required her to travel to multiple locations across the country. In each location, the claimant necessarily incurred expenses for lodging, transportation, and food. Westat provided her with a hotel room and a vehicle in each location, and it paid the vendors directly. The claimant would not have needed hotel rooms and rental cars except for her employment, and there is no evidence in the record that these payments were in excess of the actual work-related expenses. *Cf. Carr v. Indus. Comm'n*, 197 Ariz. 164, 167-68, ¶¶ 15-16 (App. 1999) (employer reimbursements for over-the-road truck driver's food and lodging expenses properly excluded from the average monthly wage calculation). The fact that claimant chose to forgo her prior position with a higher hourly pay and give up her Phoenix residence to realize a financial gain are irrelevant to her monthly average wage calculation. As such, and as conceded by counsel at argument, lodging paid on behalf of claimant was not properly classified as wages.

¶16    Neither *Matlock* nor *Kerr* support a different result. The employment contract in *Matlock* expressly defined wages to include a salary of $125 per month plus a house, utilities, and various farm food for the claimant, his wife and three children. *Matlock*, 70 Ariz. at 28. The commission in *Matlock* valued the benefits of a house, utilities and food for four persons at a mere $19.83 per month. *Id.* On appeal, the court subsequently set aside the award reasoning these items had a value greatly exceeding $19.83, and the commission's finding to the contrary was unsupported by the evidence. *Id.* *Kerr* involved the "going and coming rule" and whether a per diem paid to the claimant was a travel subsidy or some other form of compensation. *Kerr v. Indus. Comm'n*, 23 Ariz. App. 106, 107 (1975). The testimony in *Kerr* established that the weekly per diem was not necessarily a subsidy for travel, but rather a different form of

compensation which could be used by employees for any purpose and was paid regardless of distance traveled. *Id.*

**¶17** Regarding food, the claimant received a per diem payment which was predetermined by the employer based on the location of the work. "[D]etermining whether the per diem was a subsidy for travel or merely a different form of compensation is a fact question for the Commission to resolve[.]" *Id.*; *Felix v. Indus. Comm'n*, 193 Ariz. 152, 156, ¶ 18 (App. 1998) (an allowance must approximate an actual work-related expense or it should be included in the average monthly wage to prevent employers from sheltering wages in the guise of expense reimbursements). The evidence indicated that this amount was a weekly certainty, and it was paid without regard to what the claimant actually spent on food. The record does not contain evidence for us to ascertain whether this per diem amount was "more than sufficient to reimburse" the claimant for eating on the road. For that reason, we cannot conclude that this amount constituted a part of her wages.

**¶18** The claimant was also paid a weekly mileage expense reimbursement based on her weekly expense sheet. She testified that she used this reimbursement to compensate herself for out-of-pocket expenses related to driving a rental car. The ALJ did not address this particular expense reimbursement in the award and there is no specific evidence in the record as to the calculation of this reimbursement. On remand, with due consideration to the burden borne by claimant, claimant has the right to present evidence establishing she either had a contractual understanding that such expenses were instead compensation or that the reimbursements exceeded her expenses such that they would be more accurately characterized as wages. *See Carr*, 197 Ariz. at 167-68, ¶ 16.

## CONCLUSION

**¶19** For all of the foregoing reasons, we set aside the award.

